**Aida RITTER and John Rodriguez, Appellants,**

v.

**The LAS COLONITAS CONDOMINIUM ASSOCIATION, Appellee.**

**No. 05–09–00666–CV.**

Court of Appeals of Texas, Dallas.

July 16, 2010.

Rehearing Overruled Sept. 9, 2010.

---

Mike D. Gibbs, Attorney at Law, Dallas, TX, for Appellants.

Chad Robinson, Riddle & Williams, P.C., Dallas, TX, for Appellee.

Before Justices MARTIN RICHTER, LANG–MIERS, and MYERS.

## OPINION

Opinion By Justice MARTIN RICHTER.

This case arises out of a dispute between a condominium association and some of its owners over a special assessment. The Las Colonitas Condominium Association ("Association") filed a declaratory judgment action to have the court declare that a special assessment was valid. A group of owners, lead by Aida Ritter, filed a counterclaim and two supplemental counterclaims,[1] seeking a declaration that the special assessment was invalid, the process for nominating directors invalid, and the annual election void. The Association filed two traditional motions for summary judgment. The trial court granted both motions and denied all of the counterclaims. In two issues, appellants contend (1) they provided evidence controverting the Asso-

---

1. The pleadings filed by Ritter in the trial court were called "Cross–Plaintiff's Original Petition," "Cross–Plaintiff's First Supplemental Petition," and "Cross–Plaintiff's Second Supplemental Petition." The parties also refer to these pleadings in their briefs as peti- tions and the party as "cross-plaintiff." Because the pleadings filed by Ritter are against the original plaintiff, they are counter-claims and this court will refer to them by the correct designation. See TEX R. CIV. P. 97.

ciation's cause of action on the validity of the special assessment; and (2) the trial court erred in granting the motion for summary judgment on the issue of nominations. We overrule both of appellants' issues and affirm the judgment of the trial court.

## BACKGROUND AND PROCEDURAL HISTORY

The Las Colonitas Condominium is a condominium association, comprised of 243 units. It was built approximately thirty years ago and many of its common elements are in need of repairs. The bylaws of the Association provide that any special assessment for additions, alterations, or improvements in excess of $25,000 must be approved by fifty-one percent of the owners. However, if the special assessment is for the "replacement, repair, maintenance or restoration of any Common Elements," approval of the owners is not necessary.

In March 2008, the board of directors for the Association passed a $200,000 special assessment. Owners did not vote on the assessment. The Association gave owners six months to pay the special assessment. Ritter has not paid the special assessment.

In June 2008, Ritter and another owner, John Rodriguez, distributed post cards to units alleging the special assessment was "illegal," and scheduled a meeting for June 14, 2008, to discuss the issue. Before filing this lawsuit, the Association asked Ritter and Rodriguez to retract the information. When they failed to do so, the Association filed suit, seeking a declaratory judgment that the special assessment was valid.

On October 13, 2008, Ritter filed a counterclaim against the Association and alleged that the special assessment violated the bylaws.[2] Ritter also asked the court to declare any election void, if an owner was prohibited from voting because he/she failed to pay the special assessment.

The Association noticed its annual meeting for October 22, 2008. The bylaws required owners to submit nominations for new directors at least sixty days in advance of an election. However, notice of an election only required a thirty day notice. On October 17, 2008, Ritter filed a first supplemental counterclaim seeking a declaratory judgment that the nomination provision was invalid and asking the court to "declare the election of directors void where the Association refused to accept nominations for directors."

A quorum was not present at the annual meeting and the meeting was adjourned to November 19, 2008. The bylaws required notice of a new meeting be mailed within two to four weeks in advance of the adjourned meeting. The Association did not send notice by mail of the adjourned meeting. Ritter was present at the adjourned meeting. Four new board members, out of nine total, were elected at that meeting.

On January 28, 2009, the new board of directors unanimously passed a resolution to clarify the purpose of the special assessment (the "January 2009 Resolution"). The January 2009 Resolution provided that the special assessment was to fund replacement, repair, maintenance, and restoration work on the common elements, and would not be used for any additions, improvements, or alterations. The January 2009 Resolution also provided an estimate for the planned repairs as follows: $94,550 for re-painting; $36,162.50 for re-

2. Ritter and Rodriguez filed an answer to the original petition. Rodriguez did not join in any of the counterclaims. However, Rodriguez joined in the responses to the motions for summary judgment and the notices of appeal.

pairs to existing concrete and stucco; $44,201.67 for repairs to existing patio fences and patio gates; and $57,000 for repairs to existing perimeter fences. The new board also passed a resolution that required notice of annual elections be mailed ninety days in advance of the election.

The Association filed two motions for summary judgment. On March 10, 2009, it moved for summary judgment on the issue of the special assessment and asked the court to declare the special assessment valid. On March 19, 2009, the Association filed a motion for summary judgment on the issue of nominations. The Association argued that the issues related to the election were moot, since the election had occurred and the new directors had been serving for nearly four months.

On April 7, 2009, Ritter filed a second supplemental counterclaim. In the second supplemental counterclaim, Ritter alleged that the annual meeting had been adjourned because a quorum was not present, but the adjourned meeting was held without the requisite notice being mailed. Ritter asked the court to declare the meeting, the election, and any action of the new board, void. The Association filed its reply in support of its motion for summary judgment on the issue of nominations, and attached an affidavit of an owner/board member attesting that Ritter had been present at the adjourned meeting. In its reply, the Association reasserted its position that the issues were moot, and noted that Ritter and Rodriguez had failed to respond to that argument.

### STANDARD OF REVIEW

The standard for reviewing a traditional summary judgment is well-established. *See Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49

(Tex.1985). We review a summary judgment de novo to determine whether a party's right to prevail has been established as a matter of law. *Stancu v. Stalcup,* 127 S.W.3d 429, 431–32 (Tex.App.-Dallas 2004, no pet.). Under the standards for a traditional motion for summary judgment the movant must establish that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Dickey v. Club Corp.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied).

■ When a party moves for summary judgment on multiple grounds and the trial court order grants summary judgment without specifying the grounds relied upon, the party appealing that order must negate all possible grounds upon which the order could have been based or the judgment must be affirmed on any of the grounds not complained of. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970).

### DISCUSSION

### A. MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF THE SPECIAL ASSESSMENT

In their first issue, Ritter and Rodriguez contend they provided evidence controverting the Association's claim that a special assessment was authorized by the board and valid. Ritter and Rodriguez argue that they presented evidence showing (1) the board of directors did not authorize a special assessment at the March 2008 meeting; (2) the special assessment was for additions, alterations or improvements to the common areas, and therefore, it was invalid without a vote of the majority of the owners; and (3) the election of the new board of directors was not valid. The Association argues that the special

assessment in the amount of $200,000 was valid, and in accordance with the bylaws of the Association. Specifically, the Association argues that the special assessment was passed by the board in March 2008, and will only be used for replacement, repair, maintenance, and restoration of the common areas.

The bylaws, submitted by both parties as summary judgment evidence, established that a special assessment for replacement, repair, maintenance, and restoration of the common areas, did not require a vote of the owners. However, a special assessment for additions, alterations or improvements to the common areas in excess of $25,000, required the vote of fifty-one percent of the owners. It is undisputed that the owners did not vote to approve the special assessment. The central issue raised by the first motion for summary judgment, was whether the special assessment was authorized by the board, and if so, was the special assessment for additions, alterations or improvements in excess of $25,000.

■ The summary judgment evidence adduced by the Association included an affidavit by one of the members of the board stating (1) he is a member of the Association's board of directors; (2) the board of directors passed a special assessment in the amount of $200,000, in March 2008; (3) the special assessment will be used to fund replacement, repair, maintenance, and restoration work on the common elements; and (4) the special assessment will not be used for additions, alterations or improvements to the common elements.[3] The Association's evi-

dence also included a board resolution, passed by the new board in January 2009. The January 2009 Resolution confirmed that a special assessment had been passed in March 2008, and that it would only be used for repairs and maintenance, and not for any additions, improvements, or alterations. Finally, the Association submitted photographs depicting some of the decay to the structures and areas in need of repairs.

In their response to the motion for summary judgment, Ritter and Rodriguez relied upon the minutes of the March 2008 board of directors' meeting, a page from the Association's web site, and an affidavit of Ritter, to attempt to establish a genuine issue of material fact.

The minutes of the March 12, 2008, board of directors meeting stated:

**New Business**

Board voted for speed bumps $2400

Information about the budget for special assessment of $200,000 for the condos motion by Bob McCranie was 2nd by Jeff Scolastico and it was approved by the board.

The page from the website provided that the board had passed a special assessment "for the repair of the common elements." It also stated the special assessment would be used to pay for the following items: (1) Concrete/Stucco Repair; (2) Concrete Posts Parking Lot; (3) Speed Bumps; (4) Stairs; (5) Gates; (6) Wood repairs; (7) South Clubhouse Remodeling; and (8) North Clubhouse Remodeling. In his affidavit, Ritter referred to this list, and concluded that "construction of concrete posts in the parking lot, gates, and speed bumps

---

**3.** Ritter and Rodriguez objected to the affidavit on the ground that it was not the "best evidence," but failed to obtain a ruling on their objection. Therefore, the objection is waived. *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 358 (Tex.App.-Dallas 2007, pet. denied); *Gandara v. JP Morgan Chase Bank*, 01–03–00926–CV, 2005 WL 615628 (Tex.App.-Houston [1st Dist.] Mar. 17, 2005, no pet.) (failure to obtain ruling that affidavit was not best evidence waived when party fails to obtain a ruling in trial court).

is not a replacement, repair, maintenance, or restoration of the Common Elements." Ritter also stated in his affidavit that the "special assessment passed by the Board of Directors of the Association in March 2008 was not approved by fifty-one percent (51%) of the owners."

■ Based upon the record before us, we conclude the evidence established the special assessment was approved by the board in March 2008, and was for repairs and restoration. The evidence offered by Ritter and Rodriguez on these two issues did not create any genuine issues of material fact. To the contrary, most of the evidence submitted by Ritter and Rodriguez supported the Association's position that the board passed the resolution at the March 2008 meeting and the special assessment would only be used for repairs. The minutes from the March 2008 meeting confirmed that the Association had passed the special assessment in the amount of $200,000. Although brief, the minutes contained the necessary words to establish the assessment had been passed: "special assessment of $200,000;" motion by a board member; seconded; and finally "approved by the board." The statements from the website also confirmed that the "board passed a special assessment." Ritter even admitted in his affidavit that a special assessment was passed in March 2008, but that it was not approved by fifty-one percent of the owners.

■ The summary judgment evidence also established that the special assessment was for a valid purpose. Even though Ritter and Rodriguez argue that the special assessment would be used for construction, the evidence established that it would only be used for repairs. The affidavit of Robert McCranie stated that the special assessment would only be used for repairs and restoration. McCranie was a member of the board of directors when the special assessment was passed and the minutes show he made the motion to approve the special assessment. Nothing in the other evidence showed that the special assessment would be used to fund construction. The website provided that "The Board of Directors passed a special assessment for the *repair* of the common elements at Las Colonitas. The *repairs* are extensive and are necessary to remedy years of neglect and inattention." (Emphasis added). The word "construction" was not used anywhere except in Ritter's affidavit and pleadings. This was Ritter's conclusion, unsupported by facts. However, conclusory statements in affidavits are not proper summary judgment evidence and may not be used to raise an issue of fact. *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex.App.-Dallas 2005, no pet.). Summary judgment evidence that raises only "mere suspicion or surmise" of a fact in issue is not sufficient to defeat summary judgment. *Id.*[4]

■ Finally, even if these items were *new construction*, Ritter and Rodriguez failed to present any evidence that their cost exceeded $25,000. The bylaws required a vote of the owners only if the cost of an improvement exceeded $25,000. The only evidence Ritter submitted on cost was in the minutes from the March meeting. Speed bumps were referenced in the minutes, as a separate item of new business, at a cost of $2,400. This was well below the threshold for owner approval established in the bylaws.

■ In their final challenge to the special assessment, Ritter and Rodriguez ar-

---

4. Substantive defects in affidavits can be raised for the first time on appeal. *Stewart v. Sanmina Tex., L.P.*, 156 S.W.3d 198, 207 (Tex.App.-Dallas 2005, no pet.). Substantive defects include affidavits that include legal or factual conclusions. *Id.*

gue that the new board of directors could not ratify the special assessment because the election of directors was void. As discussed below, because we conclude Ritter and Rodriguez's challenge to the election fails, the January 2009 Resolution is valid. The January 2009 Resolution itemized and accounted for all of the special assessment, and confirmed that it would be used solely for restoration and repairs. Therefore, we conclude the summary judgment evidence conclusively established that the board of directors passed the special assessment in March 2008, and it will only be used for repairs and restoration. We overrule Ritter and Rodriguez's first issue.

## B. MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF NOMINATIONS AND VALIDITY OF ELECTION

■ In their second issue, Ritter and Rodriguez contend the trial court erred in granting summary judgment on the claims in the second supplemental counterclaim. The second supplemental counterclaim was filed after the Association's motion for summary judgment on the issue of nominations. However, the trial court granted the motion for summary judgment and denied all claims in the first and second supplemental counterclaims. Ritter and Rodriguez argue that a trial court cannot grant judgment on grounds not specifically set out in the motion for summary judgment. TEX.R. CIV. P. 166a(c).

■ Generally, summary judgment cannot be granted on a cause of action not raised in the summary judgment motion. *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563, 564 (Tex.1983). However, summary judgment may be granted on claims added after the motion for summary judgment was filed, if the movant has conclusively disproven ultimate facts central to all causes of action, or the claims subsequently added are derivative of the claims addressed. *McIntyre v. Wilson*, 50 S.W.3d 674, 684–85 (Tex.App.-Dallas 2001, pet. denied) ("the grounds asserted in the motion show that the plaintiff could not recover from the defendant on the later pleaded causes of action"); *Judwin Properties, Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 502–503 (Tex.App.-Houston [1st Dist.] 1995, no writ).

The Association argues that the motion for summary judgment on the issue of nominations was broad enough to encompass the later pleaded claims. We agree. There was no single cause of action pleaded in any of the supplemental counterclaims. The original counterclaim and both supplemental counterclaims asked the court to declare the election void. The second supplemental counterclaim merely alleged different facts, not causes of action, to set aside the election. The Association argued in its motion for summary judgment that any challenges to the election were moot; the election had been held, and the new board begun to act. This contention was broad enough to defeat all of Ritter and Rodriguez's challenges to the election, whether based upon good standing as an owner, a conflict in the bylaws, or lack of notice of the adjourned meeting. *McIntyre*, 50 S.W.3d at 685. In addition, the Association conclusively established that Ritter was present at the meeting, and therefore, had no grounds to complain about lack of notice. We conclude the trial court did not err in granting judgment on both supplemental counterclaims. We overrule Ritter and Rodriguez's second issue.

■ In its motion for summary judgment on the issue of nominations, the Association argued that the issues were moot, since the election had been held and the new board had begun to serve. Ritter and

Rodriguez did not assign error to this issue and did not address it until their reply brief. However, a party cannot raise a new issue in a reply brief. *Dallas County v. Gonzales,* 183 S.W.3d 94 (Tex.App.-Dallas 2006, pet. denied). In addition, Ritter and Rodriguez did not assert a general challenge that the trial court erred in granting summary judgment on the issue of nominations, and they did not challenge every ground that was raised below and could have been the basis for the court's ruling. Instead, Ritter and Rodriguez only challenged the trial court's judgment to the extent it granted judgment on the claims in the second supplemental counterclaims. Therefore, without deciding the merits of the unchallenged issues, the judgment must be affirmed. *Malooly,* 461 S.W.2d at 121.

We affirm the judgment of the trial court.