**Affirmed and Opinion filed April 12, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00185-CV

---

**SERGEANT MARY HAVER AND DEPUTY CONSTABLE KEVIN VAILES, IN THEIR INDIVIDUAL CAPACITIES, Appellants**

**V.**

**BARBARA COATS, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMAIL AMRON AND AS HEIR TO THE ESTATE OF JAMAIL AMRON, DECEASED, AND ALI AMRON, INDIVIDUALLY AND AS HEIR TO THE ESTATE OF JAMAIL AMRON, DECEASED, Appellees**

---

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2012-55551**

---

## O P I N I O N

In this case, appellees Barbara Coats and Ali Amron, individually and on behalf of the estate of Jamail Amron (collectively Coats), allege that law enforcement officers violated Jamail Amron's federal civil rights and that he died

as a result.  Appellants, Sergeant Mary Haver and Deputy Kevin Vailes, appeal from the trial court's denial of their no-evidence motion for summary judgment asserting the affirmative defense of qualified immunity.  Appellants raise three issues on appeal, which we address together.

Appellants assert that the trial court erred when it denied their no-evidence motion for summary judgment because Coats failed to produce evidence sufficient to raise a genuine issue of material fact on the inapplicability of the affirmative defense of qualified immunity.  We overrule appellants' issues on appeal because a defendant cannot establish an affirmative defense such as qualified immunity, which it bears the burden to prove, by filing a no-evidence motion for summary judgment.  We therefore affirm the trial court's order denying appellants' motion and remand this case to the trial court for further proceedings.

## BACKGROUND

The summary judgment record shows that just after midnight on September 30, 2010, Jamail Amron experienced trouble breathing.  Amron called 9-1-1 from a poolside emergency telephone at an apartment complex.  Amron told the emergency dispatcher that he had taken too much medicine and had started hyperventilating.  Amron later specified that the medicine was a muscle relaxer. The dispatcher sent paramedics from Cypress Creek Emergency Medical Services to the scene.  The paramedics were instructed to respond to a nearby parking lot and to wait until law enforcement officers arrived to clear them onto the scene.

While the ambulance was sitting in the parking lot, the paramedics observed Amron jump over a fence and approach the ambulance.  Amron told the paramedics that he needed help because he was going to die.  Amron told the paramedics that he had taken cocaine.  Amron then told the paramedics that he was thirsty and asked if they had any water.  The paramedics did not, but they asked

2

Amron to let them check him out and make sure everything was okay. Amron refused, apologized for bothering them, and then moved toward a nearby Burger King restaurant.

Coats attached excerpts from the deposition of Cindy Lansdale, the manager of the Burger King, to her response to appellees' no-evidence motion for summary judgment. Lansdale testified that she heard a bang on the front window of the restaurant. Lansdale saw Amron and told him the dining room of the restaurant was closed and she could not open the doors. Amron asked Lansdale for help. Lansdale told Amron to come around to the drive-through window and she would try to help him. Amron moved around the corner of the restaurant and asked Lansdale for a drink of water. Lansdale handed Amron a cup of water through the drive-through window. Amron told Lansdale he was not feeling well and asked her to watch him as he took the water and walked over to a nearby curb where he sat down and began sipping the water. Lansdale observed that Amron was breathing hard, but said he did not exhibit signs of alcohol or drug use. Lansdale also observed that Amron was kind, respectful, spoke clearly, was not sweating profusely, was not agitated, had no visible cuts or bruises, and did not appear to be a threat to her or to himself.

While Amron was drinking water on the curb, Lansdale heard a siren and saw a constable car with its emergency lights on pull into the drive-thru lane and stop just past Amron. A deputy constable got out of the police car, approached Amron, and told him: "If you try to hurt me, I will knock the [expletive] out of you." The constable, without explanation, immediately started placing Amron in handcuffs. Amron offered no resistance and said to the deputy constable "But, I didn't do anything." While he was being handcuffed, Amron attempted to give Lansdale a phone number.

After getting Amron's hands handcuffed behind his back, the deputy jerked Amron toward the back of an ambulance, two of which were at the scene. Amron and the deputy were at the back of the ambulance for one to two minutes when Amron, still handcuffed, ran out from behind the ambulance toward the drive-thru window. Lansdale testified that the deputy grabbed Amron and shoved him against the constable car. Three more officers, including Sergeant Haver and Deputy Vailes, drove up. All four officers struggled to pin Amron against the car. After struggling for several minutes, one of the deputy constables said something to one of the paramedics. The paramedic pulled out a syringe and gave Amron an injection in his shoulder. According to Lansdale, Amron lost "all natural body functions" and fell to the ground like a dead man.

Amron lay on his back with his arms still handcuffed beneath him. Lansdale believed Amron was either dead or in a coma. Lansdale testified that Sergeant Haver began "kick-tapping" Amron in the side and Vailes placed his boot on top of Amron's face, covering Amron's nostrils and mouth. Vailes pressed down on Amron's face with his boot until the arch of Amron's neck flattened against the ground. Lansdale believed Vailes held his boot on top of Amron's face for two to five minutes. The officers and paramedics left Amron laying on the ground for about fifteen minutes until a fire engine arrived. Amron was then placed on a gurney, loaded into an ambulance, and taken away from the scene. Once the ambulance drove off, Lansdale saw officers placing yellow investigation tape around the area where the incident had occurred. One of the investigating officers told Lansdale that Amron had died.

Coats eventually filed suit against Haver, Vailes, and numerous other defendants. Coats alleged federal civil rights claims under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983 for excessive force, false

4

arrest, unreasonable search and seizure, denial of the right to refuse medical treatment, and deliberate indifference. Haver and Vailes filed a no-evidence motion for summary judgment based on the affirmative defense of qualified immunity. The trial court denied the motion. This interlocutory appeal followed.

ANALYSIS

Haver and Vailes argue that the trial court erred when it denied their no-evidence motion for summary judgment based on the affirmative defense of qualified immunity. We disagree because a party with the burden of proof on an affirmative defense cannot use a no-evidence motion for summary judgment to establish that defense.

## I. Standard of review

Rule 166a(i) provides that a no-evidence motion for summary judgment is one in which the movant asserts that "there is no evidence of one or more essential elements of a claim or defense on which an averse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). We review the trial court's denial of such a motion de novo to determine whether the non-movant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). A motion for summary judgment must stand or fall on its own merits. *See Brown v. Hearthwood II Owners Ass'n, Inc.*, 201 S.W.3d 153, 159 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). A reviewing court cannot read between the lines or infer from the pleadings or evidence any grounds for summary judgment other than those expressly set forth in the motion. *See Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013).

## II. A no-evidence motion cannot be used to obtain summary judgment establishing the affirmative defense of qualified immunity.

Section 1983 provides a private right of action against persons acting under color of state law who violate rights secured by the United States Constitution or federal law. *Escobar v. Harris County*, 442 S.W.3d 621, 629 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing 42 U.S.C. § 1983); *Spacek v. Charles*, 928 S.W.2d 88, 92 (Tex. App.—Houston [14th Dist.] 1996, writ dism. w.o.j.); *see Harris County v. Nagel*, 349 S.W.3d 769, 777 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) ("When a state actor violates a person's right to be free from the use of excessive force, a suit for civil damages 'may offer the only realistic avenue for vindication of constitutional guarantees.'")). The defense of qualified immunity shields government officials performing discretionary functions within the scope of their authority from individual liability for civil damages under section 1983, however, as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 128 (Tex. 2015); *Nagel*, 349 S.W.3d at 777–78; *Spacek*, 928 S.W.2d at 92. Qualified immunity is an affirmative defense to a section 1983 claim. *Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009); *Escobar*, 442 S.W.3d at 629; *Bexar County v. Giroux-Daniel*, 956 S.W.2d 692, 697 (Tex. App.—San Antonio 1997, no pet); *Spacek*, 928 S.W.2d at 91.

Generally, when claims based on federal substantive law are raised in state court, state law and rules govern the manner in which the federal claims are tried and proved. *Johnson v. Nacogdoches Cnty. Hosp. Dist.*, 109 S.W.3d 532, 536 (Tex. App.—Tyler 2001, pet. denied). Under Texas law, an affirmative defense is an independent reason why a plaintiff should not recover. *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

6

Ordinarily, the party asserting an affirmative defense has the burden of both pleading and proving the defense. *Id.* As a result, under Texas procedural rules, a defendant cannot use a no-evidence motion for summary judgment to establish an affirmative defense. *Id.*

This result follows from the plain language of Rule 166a(i), which provides that a no-evidence motion can only be used to establish the inapplicability of a "defense on which *an adverse party* would have the burden of proof at trial" (emphasis added). Although a plaintiff may move for no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of an affirmative defense that the defendant alleged and has the burden to prove, a defendant must file a traditional motion for summary judgment if it wishes to establish each element of that defense as a matter of law. *See FDIC v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012) ("'When a defendant moves for summary judgment based on an affirmative defense, . . . the defendant, as movant, bears the burden of proving each essential element of that defense.'" (quoting *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996) (per curiam))).

Appellants argue that qualified immunity is an exception to this general rule. In support, appellants cite *Leo v. Trevino*, 285 S.W.3d 470, 480 (Tex. App.—Corpus Christi 2006, no pet.). In *Leo*, the Corpus Christi Court of Appeals held that as a result of the shifting burdens of proof found in federal cases addressing qualified immunity, a state actor could use a no-evidence motion for summary judgment to raise the qualified immunity defense by doing nothing more than pleading in good faith that qualified immunity applies. *Id.* Once this assertion is made, the court held, the "burden shifts to the plaintiff to rebut" the defense. *Id.*[1]

---

[1] Although not cited by the parties, we note that the Fort Worth Court of Appeals has reached the same conclusion as the Corpus Christi Court of Appeals in *Leo*. *See Poteet v.*

Because this procedure would enable a section 1983 defendant to prevail without offering any proof in support of the qualified immunity defense, we decline to follow the *Leo* court's holding. As the Supreme Court of Texas has explained, "[s]ummary judgments in federal courts are based on different assumptions, with different purposes, than summary judgments in Texas." *Casso v. Brand*, 776 S.W.2d 551, 555–56 (Tex. 1989). Thus, although "federal courts place responsibilities on both movants and non-movants in the summary judgment process," Texas courts "never shift the burden of proof to the non-movant unless and until the movant has 'establish[ed] his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law.'" *Id.* at 556 (quoting *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)).

Consistent with this principle, the First Court of Appeals explained in *Escobar* that the defendant bears a burden of proof in establishing a defense of qualified immunity. The *Escobar* court acknowledged that federal precedent addressing qualified immunity had created a shifting burden of proof "when a governmental official asserts the affirmative defense of qualified immunity." 442 S.W.3d at 630. The court recognized, however, that the federal burden-shifting procedure places the initial burden on the state actor alleging qualified immunity to not only assert good faith—as *Leo* requires—but also establish that he was acting within the scope of his discretionary authority. *Id.*; *see also Aguiar v. Whiteley*,

---

*Sullivan*, 218 S.W.3d 780, 787 (Tex. App.—Fort Worth 2007, pet. denied) ("The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of qualified immunity; rather, it is sufficient that the movant in good faith pleads that it is entitled to immunity. . . . Once the movant asserts this affirmative defense, the burden shifts to the plaintiff to rebut it.").

8

No. SA-15-CV-DAE (HWB), 2016 WL 502199, at *6 (W.D. Tex. Feb. 8, 2016).[2] The court concluded that "this procedure essentially mirrors traditional summary-judgment practice in Texas state courts with respect to affirmative defenses." *Escobar*, 442 S.W.3d at 630.

Texas courts have taken a similar approach to the analogous affirmative defense of official immunity, recognizing that the defendant has the burden to plead and prove it. *Brown & Gay Eng'g, Inc.*, 461 S.W.3d at 128; *see City of Lancaster v. Chambers*, 883 S.W.2d 650, 656–57 (Tex. 1994) (stating that official immunity test is derived from federal test for claims of qualified immunity). As a result, a defendant cannot obtain a no-evidence summary judgment based on official immunity. *See Dorrough v. Faircloth* 443 S.W.3d 278, 285 (Tex. App.—San Antonio 2014, no pet.) ("Because common-law official immunity is an affirmative defense, and Dorrough has the burden to prove each of its elements, . . . a no evidence motion was inapt."); *Battin v. Samaniego*, 23 S.W.3d 183, 185–86 (Tex. App.—El Paso 2000, pet. denied).[3]

---

[2] Although *Leo* suggests that simply pleading good faith is sufficient to meet that element of the defense, 285 S.W.3d at 480, other Texas courts considering motions for traditional summary judgment on qualified immunity have examined whether the movant offered evidence of good faith (that is, objective legal reasonableness) and whether the non-movant controverted that evidence. *E.g., City of San Antonio v. Hernandez*, 53 S.W.3d 404, 408–09 (Tex. App.—San Antonio 2001, pet. denied); *Wallace v. Moberly*, 947 S.W.2d 273, 278 (Tex. App.—Fort Worth 1997, no writ); *Robinett v. Carlisle*, 928 S.W.2d 623, 625–27 (Tex. App.—Fort Worth 1996, writ denied); *cf. Telthorster v. Tennell*, 92 S.W.3d 457, 465–66 (Tex. 2002) (concluding officer's summary-judgment proof conclusively established element of good faith in support of analogous defense of official immunity); *Tex. Dep't of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 488, 490 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (explaining that only if defendant conclusively establishes good-faith element of official immunity does burden shift to plaintiff to come forward with controverting evidence that no reasonable official under similar circumstances could have believed conduct was justified). As we have explained, the inquiry regarding the element of good faith (or legal reasonableness) for qualified immunity is an objective one that includes both factual and legal dimensions. *Nagel*, 349 S.W.3d at 778, 782.

[3] We note that employment discrimination is another area of law in which federal courts have adopted a burden-shifting framework. Texas courts have reconciled that framework with

Here, for reasons not disclosed in the record, appellants filed only a no-evidence motion for summary judgment on their affirmative defense of qualified immunity. This motion was not an appropriate procedural vehicle for establishing their affirmative defense without a trial. *See* Tex. R. Civ. P. 166a(i); *Nowak*, 110 S.W.3d at 680 ("[A] defendant urging summary judgment on an affirmative defense must come forward with summary judgment evidence for each element of the defense."); *Bartlett v. Cinemark USA, Inc.*, 908 S.W.2d 229, 238 (Tex. App.—Dallas 1995, no writ) (applying state summary judgment standards to defense of qualified immunity). We therefore overrule appellants' issues challenging the trial court's denial of their motion.

## CONCLUSION

Having overruled appellants' issues on appeal, we affirm the trial court's order denying appellants' no-evidence motion for summary judgment and remand the case to the trial court for further proceedings.

/s/    J. Brett Busby
       Justice

Panel consists of Justices Boyce, Busby, and Brown.

---

our summary judgment procedure by requiring an employer moving for traditional summary judgment to establish as a matter of law a legitimate, nondiscriminatory reason for its adverse employment action, at which point the burden shifts to the employee to raise a fact issue regarding whether the employer's reason was a pretext for discrimination. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000); *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 728 (Tex. App.—Fort Worth 2006, no pet.). Given this burden, the employer cannot obtain a no-evidence summary judgment on the ground that there is no evidence it did not have a legitimate, nondiscriminatory reason for its action. *Hernandez v. Gray Wolf Drilling, L.P.*, 350 S.W.3d 281, 285–86 (Tex. App.—San Antonio 2011, no pet.).