

# NUMBER 13-22-00287-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LARRY MARK POLSKY, Appellant,

v.

SPRING MART ENTERTAINMENT,
LLC D/B/A DOG HOUSE PUB & GRUB, Appellee.

## On appeal from the County Court at Law No. 1 of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Memorandum Opinion by Justice Tijerina**

Appellant Larry Mark Polsky[1] appeals the trial court's granting of summary

judgment in favor of appellee Spring Mart Entertainment, LLC, d/b/a Dog House Pub &

Grub (the bar). By two issues, Polsky argues the trial court erred by: (1) granting the bar's

---

[1] Polsky is an attorney and represented himself throughout these proceedings.

traditional summary judgment because qualified immunity is not a valid affirmative defense; and (2) striking his affidavit in opposition to the bar's no evidence motion for summary judgment. We affirm.

## I. BACKGROUND

According to Polsky's petition, on January 24, 2020, Polsky and his friend Victor Mar were at the bar when a woman approached Jose Lopez, the bar's bouncer, and complained that Polsky stuck his hand up her dress and grabbed her vagina. Abelardo Gomez, a county constable who was working security at the bar, approached Polsky and Mar and asked Polsky to exit the bar. Polsky and Mar followed Gomez outside.

Outside of the bar, Gomez informed Polsky that a female patron accused Polsky of "grabb[ing] her genitals," and Polsky "had to leave the premises." The petition alleged that Polsky asked Gomez to invite the bar manager, Ralph Pizana, outside so that they could review the security tape to prove Polsky's innocence. Polsky asserted that Pizana refused to meet with Polsky and instead instructed Gomez to remove Polsky from the premises.

On April 7, 2020, Polsky filed suit against the bar asserting slander and intentional infliction of emotional distress causes of action. The bar generally denied Polsky's claims, asserted the defense of qualified privilege, and filed a 91a motion to dismiss, arguing Polsky's claims had no basis in law and should be dismissed. *See* TEX. R. CIV. P. 91a ("Dismissal of Baseless Causes of Action"). Polsky filed a motion to strike the bar's 91a motion to dismiss and a motion to "enter [Polsky's] default judgment[] due to spoliation of evidence by [the bar] and enter [Polsky's] request for attorney['s] fees."

2

The bar responded claiming Polsky's motion for default judgment was not a valid motion because Texas recognizes only two types of default judgments: a no-answer default judgment and a post-answer default judgment. The bar further asserted that there was no alleged spoliation because the video Polsky requested "could not record audio and thus, could not record a defamatory statement." The trial court denied Polsky's motion for default judgment.

Polsky amended his petition to include slander per se. The bar filed a combined motion for traditional and no-evidence summary judgment. In the traditional summary judgment motion, the bar asserted the defense of qualified immunity, stating Gomez and Lopez were acting within their duties—ensuring the safety of the bar's patrons—when they made the statement. Thus, the constables and Lopez communicated the statement to each other in good faith acting within their duties as security and bouncer for the bar. The bar further asserted that Polsky could not show actual malice to defeat the privilege of qualified immunity, that the statement was published with knowledge of its falsity, or that it was made with reckless disregard for the truth. Additionally, the bar claimed the defense of "truth" applied to Polsky's claims; that is, there was no evidence that a woman did not make a complaint about Polsky.

The bar attached deposition testimony from Polsky, Gomez, and Lopez and the parties' discovery responses. In his deposition, Polsky stated that the bar fabricated this alleged complaint because he was "an elderly Caucasian man in a bar full of young Hispanic people." Polsky conceded he had no evidence but was "entitled to think that." According to Polsky, he had no physical evidence that the bar fabricated this complaint

because the bar destroyed the physical evidence by allowing the security tape to be erased.

In its no-evidence motion for summary judgment, the bar contended that Polsky produced no evidence: (1) that the bar published a slanderous statement to a third party; (2) that such a statement caused his reputation any harm; (3) to defeat the affirmative defenses of qualified immunity and truth; and (4) of a valid intentional infliction of emotional distress cause of action.[2]

Polsky responded to the motion for summary judgment, asserting qualified immunity did not apply because he was not an employee of the bar. He attached deposition testimony from himself, Lopez, and Gomez; his letter to the bar requesting video evidence of the night in question; discovery responses; and his affidavit. The trial court granted the bar's objections to Polsky's affidavit, asserting Polsky lacked personal knowledge, made conclusory and speculative statements within, and did not affirmatively state the testimony relied on true facts.

The trial court granted the bar's traditional and no-evidence motion for summary judgment.[3] This appeal followed.

---

[2] "Under Texas law, an affirmative defense is an independent reason why a plaintiff should not recover." *Haver v. Coats*, 491 S.W.3d 877, 881 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "[A] defendant cannot use a no-evidence motion for summary judgment to establish an affirmative defense." *Id.* Therefore, a party cannot prevail on a no evidence summary judgment motion by establishing the affirmative defense of qualified immunity. *See id.*

[3] By his second issue, Polsky argues the trial court erred in striking his affidavit and holding that there was "no evidence in the court file of [his] damages" and that "slander per se/defamation per se exists as to the statements Mr. Lopez made about [him]." Thus, Polsky challenges the trial court's no-evidence summary judgment. "Although we usually address the no-evidence motion first when both no-evidence and traditional summary judgment motions are filed, *see Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004), we will review the propriety of granting the traditional summary judgment on [Polsky's] affirmative defense first because it is dispositive." *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 225 (Tex. App.—Fort Worth 2013, no pet.). Nonetheless, we considered Polsky's affidavit in his

## II. TRADITIONAL SUMMARY JUDGMENT

By his first issue, Polsky argues the trial court erred in granting the bar's traditional motion for summary judgment. He contends that defense of qualified immunity does not apply to the bar because Polsky is not an employee of the bar.

### A. Standard of Review

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To prevail on a traditional motion for summary judgment, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Crim. Just.*, 148 S.W.3d 374, 381 (Tex. 2004). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubt resolved in its favor. *Id.* at 549.

When a defendant moves for traditional summary judgment, he must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of his affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the movant meets its burden as set out above, the burden then shifts to the nonmovant

---

response to the bar's traditional summary judgment, and we conclude that the trial court did not err in granting the traditional summary judgment.

to raise a genuine issue of material fact precluding summary judgment. *Centeq*, 899 S.W.2d at 197. The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

**B.    Applicable Law**

"[W]hether a statement qualifies as defamation per se is generally a question of law." *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015) (orig. proceeding). Defamation per se statements involve "statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish." *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013). Accusing someone of a crime is an example of defamation per se. *In re Lipsky*, 460 S.W.3d at 596; *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi–Edinburg 1997, writ denied).

"The common law provides a qualified privilege against defamation liability when 'communication is made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication.'" *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (quoting *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994)); *see also Tindall v. Kahlig Auto Grp. Mgmt. LLC*, No. 04-21-00368-CV, 2022 WL 16952890, at *2 (Tex. App.—San Antonio Nov. 16, 2022, no pet.) (mem. op.) (recognizing that qualified privilege is "between people having a common business interest in employment-related matters or in reference to matters that the speaker has a duty to communicate to the other"). Because defamation

inhibits free speech, "the qualified privilege offers an additional safeguard, even in cases of private, non-political speech." *Burbage*, 447 S.W.3d at 254.

Qualified privilege is an affirmative defense, and "the defendant bears the burden of proving privileged publication unless the plaintiff's petition affirmatively demonstrates privilege." *Id.* In a summary judgment proceeding, the defendant must "establish that the allegedly defamatory statement was made with an absence of malice." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). "Actual malice, in the defamation context, means 'the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true.'" *Burbage*, 447 S.W.3d at 254 (quoting *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex. 1994) (per curiam)). "Qualified privilege presents a question of law when the statements at issue employ unambiguous language and where the facts and circumstances of publication are undisputed." *Id.*

## C.    Analysis

In its motion for summary judgment, the bar raised the affirmative defenses of qualified immunity and truth and attached the deposition testimony of Lopez, Gomez, and Polsky.[4] In his deposition, Gomez testified that while he was working the bar's security

---

[4] According to Polsky, a female complainant:

> went in there and she told [] Lopez what her boyfriend told her to tell him . . . . That's the reason [the bar] won't identify the girl because she went in there, in my opinion, because her boyfriend was pissed that I was talking to girls . . . wearing a $100,000 worth of jewelry and looked good as an old man. That's what I think happened, and that's the reason [the bar] can't identify the girl. They won't identify the girl, and that's the reason they erased the tape, allowed it to be erased. They know it never happened.

Polsky reiterated that he is entitled to his own opinion: "I can't prove it. I'm purely speculating. If I could prove it, and if I knew that's what happened, then they would be able to identify the girl, Counselor." Consequently, this testimony does not raise a genuine issue of fact. *See Ritter v. Las Colonitas Condo. Ass'n*, 319 S.W.3d 884, 890 (Tex. App.—Dallas 2010, no pet.) ("Summary judgment evidence that raises only 'mere suspicion or surmise' of a fact in issue is not sufficient to defeat summary judgment." (quoting

detail, Lopez approached him and informed him that there was a complaint against Polsky by an unknown female. The female "did not want to give her name," and "just wanted [the bar] to know" that Polsky "harassed" her. Gomez stated he approached Polsky about it, Polsky started yelling, and Gomez informed Polsky he needed to leave the bar and "come back another day."

Lopez testified that a woman approached him, complaining that Polsky had inappropriately touched her. Lopez then asked her if she wanted to proceed with her allegations, but "she didn't want any problems." Lopez then voiced the female complainant's information to Gomez and instructed Gomez to ask Polsky to leave due to their "zero tolerance policy." Additionally, Lopez stated that as he escorted Polsky out, Lopez received an additional complaint "about [Polsky] making them uncomfortable," but Lopez did not want to involve management because he had "already asked [Polsky] to leave." Lopez stated he tried to deescalate the situation by "try[ing] to keep the peace for both parties. Not only because of her, but because of [Polsky]. Because if [Lopez] were to let it go and she . . . tells her boyfriend . . . there's a high chance that he might come and try to start problems with [Polsky]."

The bar's summary judgment evidence established: (1) Lopez and Gomez were working for the bar, (2) an unknown female allegedly complained to Lopez about Polsky, (3) Lopez approached Gomez, repeated the complaint, and requested Gomez's assistance in deescalating the matter, (4) Gomez approached Polsky and escorted him outside, (5) Gomez informed Polsky about the accusation, and (6) Gomez instructed

_Selz v. Friendly Chevrolet, Ltd._, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.)).

Polsky to leave at Lopez's request. Here, the communication was made by Lopez and Gomez while they were working for the bar—persons "having a corresponding interest or duty in the matter to which the communication relates." *See Bergman v. Oshman's Sporting Goods, Inc.*, 594 S.W.2d 814, 816 (Tex. App.—Tyler 1980, no writ). Therefore, the communication is "qualifiedly privileged." *See id.* Moreover, there was no evidence of actual malice made by Lopez or Gomez. To the contrary, the bar provided evidence that Lopez and Gomez did not make the statement with knowledge that it was false or with reckless disregard of whether it was true. *See Burbage*, 447 S.W.3d at 254. We therefore conclude the bar conclusively established the defense of qualified privilege as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Booth*, 900 S.W.2d at 341. Accordingly, the burden shifted to Polsky to raise a genuine issue of material fact precluding summary judgment. *See Centeq*, 899 S.W.2d at 197.

Polsky asserted that "qualified immunity is not a valid defense because Polsky is not an employee of [the bar] and [the bar] never conducted an investigation concerning the criminal complaint about Polsky." However, "[q]ualified privileges against defamation exist at common law when a communication is made in good faith and the *author*, the *recipient* or a *third person*, or one of their *family members*, has an interest that is sufficiently affected by the communication." *Cain*, 878 S.W.2d at 582 (emphasis added). In other words, "[t]he privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate." *Johnson*, 891 S.W.2d at 646; *Grant v. Stop-N-Go Mkt. of Tex., Inc.*, 994 S.W.2d 867, 874 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("The privilege applies as long as the

9

communication passes *only* to persons having an interest or duty in the matter to which the communications relate."). Here, Lopez and Gomez had an interest in the matter, a duty to keep the bar safe, and a duty to enforce the bar's zero tolerance policy. *See Johnson*, 891 S.W.2d at 646. Thus, we reject Polsky's argument that because Polsky is not an employee of the bar, the qualified privilege defense does not extend to the bar.

Alternatively, Polsky asserted that "Lopez made the statements with actual malice because he never bothered to identify the victim," and therefore, he raised a "fact issue concerning whether Lopez made the statement with actual malice." Polsky does not direct us to any portion in Lopez's deposition where we may find evidence that he made the statements with actual malice. *See* TEX. R. APP. P. 38.1(i) (requiring the appellant's brief to contain citations to the record in support of the contentions made); *Rendleman v. Clarke*, 909 S.W.2d 56, 59 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd) ("The failure to cite to relevant portions of the trial court record waives appellate review."). Throughout Polsky's affidavit, Polsky reiterates that the bar "intentional[ly], malicious[ly], and reckless[ly]" allowed the security tape to be erased. *See Ritter v. Las Colonitas Condo. Ass'n*, 319 S.W.3d 884, 890 (Tex. App.—Dallas 2010, no pet.) ("[C]onclusory statements in affidavits are not proper summary judgment evidence and may not be used to raise an issue of fact."). However, the "[f]ailure to investigate the truth or falsity of a statement before it is published is insufficient to show actual malice." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 497–98 (Tex. App.—Dallas 2003, no pet.); *see also Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 341–42 (Tex. App.—San Antonio 2000, pet. denied) ("Negligence, failure to investigate the truth or falsity of the statements prior to publication,

or failure to act as a reasonable prudent person is insufficient to support a finding of malice."). Thus, Polsky provided no evidence raising a fact issue that Lopez published the statement with knowledge of its falsity or with reckless disregard for its truth other than Polsky's bare conclusory statements. Accordingly, we overrule Polsky's first issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Delivered and filed on the
7th day of March, 2024.

11