# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00264-CV[1]

**George Green and Garlan Green, Appellants**

**v.**

**Port of Call Homeowners Association; Port of Call Homeowners Association, Inc.; John Ross Buchholtz; Nancy Carothers; Randolph Harig; Phillip Jacobs; Richard Pat McElroy; Christopher Rockwood; Christine Mashay Taylor; Alliance Association Management, Inc.; Jose Balderas; Harold Brown; Sharon Murphy; and Niemann & Niemann, LLP d/b/a Niemann & Heyer, LLP, Appellees**

---

### FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
### NO. 18314, HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

George Green and Garlan Green[2] appeal from the trial court's final judgment in their

suit against Port of Call Homeowners Association; Port of Call Homeowners Association, Inc.;

John Ross Buchholtz; Nancy Carothers; Randolph Harig; Phillip Jacobs; Richard Pat McElroy;

---

[1] The notice of appeal for this case was originally filed in this Court in December 2016, and the case was subsequently transferred to the El Paso Court of Appeals that same month in compliance with a docket-equalization order issued by the supreme court. *See* Tex. Gov't Code § 73.001 (authorizing transfer of cases). In April 2018, the supreme court issued another order transferring back to this Court this case and thirty eight other cases that had also been previously transferred to the El Paso Court but had not reached a final disposition. *See* Misc. Docket No. 18-9054, Transfer of Cases from Courts of Appeals (Tex. Apr. 12, 2018).

[2] Garlan Green is George Green's father. Garlan Green died during the pendency of the underlying proceedings. George Green, as executor, pursued the litigation on his father's behalf. *See* Tex. R. Civ. P. 151.

Christopher Rockwood; Christine Mashay Taylor; Alliance Association Management, Inc.; Jose Balderas; Harold Brown; Sharon Murphy; and Niemann & Niemann, LLP d/b/a Niemann & Heyer, LLP. As explained below, we will reverse the trial court's dismissal of the Greens' defamation claim against Port of Call Homeowners Association, Inc. We will modify the trial court's judgment to remove the conditional award of appellate attorneys fees to each defendant in the event of an unsuccessful appeal of the trial court's rulings on any issue other than the defamation claim. We will otherwise affirm the trial court's judgment.

## BACKGROUND

Garlan Green was the owner of a townhouse in the Port of Call Townhouses, a subdivision in Llano County. The townhouses were subject to a Restated Declaration of Covenants and Restrictions ("the Restrictive Covenants) filed in the Llano County real property records. The Restrictive Covenants called for the creation of a homeowners association, the Port of Call Homeowners Association (POC), which was originally an unincorporated association. After POC was formed, it adopted Articles of Association ("the Articles"), which imposed certain additional duties on POC. POC also adopted rules and regulations ("the Rules"). In February 2013, Garlan Green's son, George Green, acting on his behalf and through a power of attorney from his father, sued POC, Nancy Carothers,[3] Randolph Harig,[4] and Phillip Jacobs.[5] The Greens alleged that POC,

---

[3] Carothers served as President of POC's board of directors from April 2009 through January 7, 2012.

[4] Harig served as an officer on POC's board of directors at various times from 1981 through 2014.

[5] Jacobs served as an officer on POC's board of directors from 2000 through 2015.

Carothers, Harig, and Phillip breached fiduciary duties by failing to "act with integrity and fidelity in connection with operation of [POC] and assessments paid." The Greens alleged that these defendants "failed to use ordinary care in the handling of financial affairs of POC and failed to provide for the long-term protection and preservation of common property." The Greens also alleged that POC violated the Texas Debt Collection Practices Act by attempting to collect assessments that were not due. *See* Tex. Fin. Code §§ 392.001-.404 (DCPA).

The Greens also alleged that this same conduct constituted breach of a contract between them and POC that was created by the Restrictive Covenants, Articles, and Rules, and that Carothers, Harig, and Jacobs tortiously interfered with that contract and induced POC's breach. The Greens alleged that Carothers, Harig, and Jacobs had the authority to act on POC's behalf, and that all actions taken by them were within the course and scope of their authority as POC officers and directors and were taken to accomplish POC's objectives. Finally, the Greens alleged that they were damaged by POC, Carothers, Harig, and Jacobs' failure to comply with the recorded Restrictive Covenants and they sought an assessment of civil damages pursuant to chapter 202 of the Texas Property Code. *See* Tex. Prop. Code § 202.004(c) (providing that court may assess civil damages for violation of restrictive covenant in amount not to exceed $200 for each day of violation). POC, Carothers, Harig, and Jacobs answered and filed general denials of all the Greens' allegations.

In March 2014, the Greens filed a first amended petition, adding as defendants the now-incorporated Port of Call Homeowners Association, Inc. (POCI),[6] John Ross Buchholtz,[7] and Richard Patrick McElroy.[8] The Greens alleged that all the defendants:

> failed to abide by [documents governing POC and POCI including the Restrictive Covenants, Articles, Rules, and Bylaws] by, among other things, refusing to properly account for expenditures of Association funds, refusing to comply with and intentionally circumventing rules requiring approval for expenditures that exceed $2,500, misappropriating assessments, wasting Association assets, refusing to provide documents, failing to comply with statutory filing requirements, failing to protect Association assets, self-dealing, failing to operate in good faith, and/or allowing their personal interests to prevail over the interests of the Association and property owners.

The causes of action asserted were the same as in the original petition—breach of fiduciary duties, breach of contract, tortious interference with contract, and violation of the DCPA—and the Greens continued to seek assessment of civil damages pursuant to chapter 202 of the Texas Property Code. POCI, Buchholtz, and McElroy filed general denials.

In September 2014, the Greens filed another amended petition, which they also called a "First Amended Original Petition." This filing added the following allegations:

> The Defendants refused to seek repayment of misspent funds and refused to maintain procedures requiring accountability to the property owners and Green. The Defendants simply do not want to be accountable to Green despite their legal, contractual, and fiduciary obligations to do so. Green seeks to hold the Defendants accountable and

---

[6] POC was incorporated in November 2013.

[7] Buchholtz served as an officer on POC's, and subsequently POCI's, board of directors from February 2013 through all time periods relevant to this suit.

[8] McElroy served on POC's, and subsequently POCI's, board of directors from September 2011 through September 2015.

4

establish a system and climate of accountability. In response, Green has been labeled a troublemaker and even been falsely accused of a crime.

The Association is now attempting to collect "special assessments" from Green and the other property owners for "repairs" to the building exterior siding in the property which has inexplicably, unreasonably, and improperly morphed into an assessment to "replace" the entirety of the siding—the overwhelming majority of which does not need to be replaced and some that remains under warranty (paint). The cost apparently agreed to by the Association exceeds by more than ten (10) fold the reasonable cost to replace the minimal rotted siding. The Association even complained when Green replaced the minimal rotting siding on his property. The Association's conduct in this regard is arbitrary, capricious, and unreasonable.

The amended petition made no alterations to the causes of action alleged. Following this filing, the parties engaged in protracted discovery, the defendants sought and obtained a protective order to limit the Greens' document requests, and obtained an order enforcing the protective order in which the trial court ordered that (1) the Greens refrain from communicating directly with the defendants and that all communications between the parties be made by attorneys of record, and (2) the defendants "only need to supplement documents from previous discovery requests and information requests made by Plaintiff every sixty (60) days."[9]

In October 2014, POCI filed suit against Garlan Green and George Green seeking injunctive relief to prevent the Greens from interfering with a construction project at the Port of Call

---

[9] The Greens filed an appeal in this Court to challenge this order, which the Court dismissed as moot when the trial court vacated the order and replaced it with a new discovery order requiring supplementation of discovery requests made every sixty days and stating that any requests by the Greens for production of documents previously produced would be viewed as an abuse of discovery. This Court entertained the Greens' complaints about this subsequent discovery order in the form of a petition for writ of mandamus, which this Court denied. *See In re Green*, No. 03-14-00725-CV, 2015 WL 1882651, at *1 (Tex. App.—Austin Apr. 24, 2014, orig. proceeding) (mem. op.).

5

Townhouses that was being managed by Alliance Association Management, Inc. (Alliance).[10] This suit was assigned cause number 19124 in the 33rd Judicial District Court. The Greens filed a counterclaim in cause number 19124 in October 2015 that, among other things, alleged that POCI made defamatory statements about them.

In January 2015, the Greens filed a third amended original petition adding Alliance as a defendant. The Greens alleged that Alliance was joined as a defendant:

> primarily as agent for Port of Call Homeowners' Association and Port of Call Homeowners' Association is responsible for the acts and omissions of [Alliance]. However, [Alliance] is, on information and belief, the acting contractor for work being performed on what is purported to be Port of Call common areas and, to the extent that there have been misrepresentations and failures to disclose information for which Port of Call Homeowners' Association disclaims responsibility, [Alliance] should be held responsible.

Other than the addition of Alliance as a defendant and the allegations made against it, the third amended petition did not differ in any material way from the previous petition and included the same causes of action. Alliance filed a general denial.

The Greens filed a fourth amended petition in April 2015. By this time, George Green's father Garlan Green had died and the townhouse he owned had been conveyed to George Green by special warranty deed. The amended petition added no defendants but included the following new allegations against Alliance:

---

[10] Alliance was a property management company hired by POC for the servicing and maintenance of the Port of Call Townhouses.

> [Alliance] is the acting contractor for the defective work being performed on what is purported to be Port of Call common areas pursuant to the special assessment complained of herein. [Alliance's] work in that regard has been negligent and grossly negligent. [Alliance] has failed to meet the reasonable standard of care for general contractors and knowledgeable persons trained in the correct way to install siding. To the extent that there have been misrepresentations and failures to disclose information as generally described above and for which Port of Call Homeowners' Association disclaims responsibility, [Alliance] should be held responsible.
>
> Further [Alliance] is a debt collector for the Association. [Alliance] has harassed/ abused the Plaintiff to collect a debt not owed by Plaintiff. [Alliance] misrepresented the character extent or amount of debt allegedly owed by Plaintiff and did not properly handle a disputed item in Plaintiff's file as required of third-party debt collectors. Specifically, [Alliance] did not make a written record of the dispute and stop all collection efforts until the true amount of the debt could be determined/did not investigate the dispute according to the procedure outlined in the Texas Finance Code.

The Greens also alleged that Alliance conspired to accomplish the unlawful purpose of harassing, suing, villifying, and bullying the Greens "by way of, and while participating in, the breach of fiduciary duty, breach of contract, tortious interference, and other actions generally alleged herein."

By August 2015, POCI had initiated proceedings to foreclose on Green's property for delinquent fees owed to POCI. Green responded by filing another suit in the 33rd Judicial District Court against POCI, Alliance, and Niemann & Niemann, LLP.[11] Green sought to enjoin foreclosure for nonpayment of regular and special homeowners' association assessments. This suit was assigned cause number 19508.

After continued litigation, including motions to amend the scheduling order, motions to strike experts, and depositions of several witnesses, each of the defendants filed traditional and

---

[11] Niemann & Niemann, LLP, was the law firm representing POCI in the foreclosure proceedings.

no-evidence motions for summary judgment on all the Greens' claims asserted against them in the Greens' fourth amended petition in cause number 18314.[12] They also requested that the court consolidate cause number 18314, cause number 19124, and cause number 19508. After the court consolidated the cases, the Greens filed what they titled a "First Supplemental Original Petition After Consolidation." In this pleading, the Greens reasserted the claims made in the previous pleadings and also alleged a cause of action for defamation against all the defendants.[13] In response, POCI, along with its current and former board members and Alliance, along with its employees, filed motions to dismiss the defamation claim pursuant to the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code ch. 27. After a hearing, the trial court granted the traditional and no-evidence summary judgments on all claims against most of the defendants and granted the motions to dismiss the defamation claims pursuant to the TCPA. Subsequently, the court held a hearing to further clarify which claims remained against which parties. Niemann & Niemann filed a motion for summary judgment, which was granted except with respect to the claim against it for violating the DCPA. Rockwood and Murphy filed motions for summary judgment on the Greens' claims against them for defamation.

---

[12] The claims were breach of fiduciary duty, breach of contract, tortious interference with contract, violation of the DCPA, and a request for civil damages under chapter 202 of the Texas Property Code.

[13] As in all of their pleadings, the Greens do not distinguish among the various defendants or explain what acts they attribute to which defendant. Instead, the allegations are asserted globally against all the defendants, a feature that makes it particularly difficult to cogently address their appellate arguments. It also appears from the record that at some point the Greens added as defendants POCI board members Christopher Rockwood, who served on the board from June 2015 through trial of this case, and Christine Mashay Taylor, who served on the board from July 2015 through trial of this case, and Alliance employees Harold Brown, Joe Balderas, and Sharon Murphy.

8

As a result of the court's various rulings on summary-judgment motions and motions to dismiss under the TCPA, the only remaining claims at trial were the Greens' claims against Niemann & Niemann, POC, and Alliance for violating the DCPA. After a bench trial, the court rendered judgment that the Greens take nothing by way of their claims against Niemann & Niemann, POC, and Alliance. The trial court also filed findings of fact and conclusions of law in support of the judgment. After filing motions for new trial, the Greens perfected this appeal. In twenty-five issues, the Greens challenge the trial court's rulings on the traditional and no-evidence summary judgment motions, the motions to dismiss the defamation claims pursuant to Texas Civil Practice and Remedies Code chapter 27, the take-nothing judgment on the DCPA claims, and the trial court's conditional award of appellate attorneys' fees.

**DISCUSSION**

*Claims Against Board Member Defendants*

The Greens alleged that Garlan Green was the owner of a townhouse in the Port of Call Townhouses, a Horseshoe Bay subdivision in Llano County that is subject the Restrictive Covenants, which were filed in the Llano County real property records. The Restrictive Covenants called for the creation of a homeowners association, the Port of Call Homeowners Association, which was originally an unincorporated association but has since been incorporated and named the Port of Call Homeowners Association, Inc. According to the Greens, the Restrictive Covenants and related "governing documents" imposed on POC and POCI various duties with respect to the management of the common properties and to assessments paid by the property owners. After POC was formed, it adopted Articles of Association, which imposed certain additional duties on POC

9

and POCI. POC adopted rules and regulations and POCI adopted Bylaws. The Greens alleged that the Restrictive Covenants, Articles, Rules, and Bylaws (collectively, "the Governing Documents") created contractual obligations between POC and POCI and property owners such as the Greens. The Greens alleged that the Association's board members ("the Member Defendants") "have failed to abide by the Governing Documents and/or Texas state law by, among other things, refusing to properly account for expenditures of Association funds, refusing to comply with and intentionally circumventing rules requiring approval for expenditures that exceed $2,500, misappropriating assessments, wasting Association assets, refusing to provide documents, failing to comply with statutory filing requirements, failing to protect Association assets, self-dealing, failing to operate in good faith, and/or allowing their personal interest to prevail over the interests of the Association and property owners, including the Greens." The Greens asserted that POCI was attempting to collect "special" assessments from them for repairs to the building exterior that had become overly extensive and included replacing siding unnecessarily and at much greater expense.

The Greens asserted numerous claims against the Member Defendants including breach of fiduciary duty, negligence, breach of contract, tortious interference with contract, conversion, violation of the Theft Liability Act and the Fair Debt Practices Act, and fraud. The Member Defendants moved for traditional summary-judgment on numerous grounds including immunity from individual liability. They also filed no-evidence motions for summary judgment on all of the Greens' claims against them. The trial court granted summary-judgment on several of the grounds asserted in the traditional motion for summary judgment and granted no-evidence motions for summary judgment on other of the Greens' claims against the Member Defendants.

We first consider the trial court's granting summary judgment on immunity grounds. The Port of Call Homeowners Association was incorporated in 2013 and from that time has been a nonprofit corporation. The Texas Business Organizations Code, which governs nonprofit corporations, provides, in pertinent part:

> (a) A director shall discharge the director's duties, including duties as a committee member, in good faith, with ordinary care, and in a manner the director reasonably believes to be in the best interest of the corporation.
>
> (b) A director is not liable to the corporation, a member, or another person for an action taken or not taken as a director if the director acted in compliance with this section. A person seeking to establish liability of the director must prove that a director did not act: (1) in good faith; (2) with ordinary care; and (3) in a manner the director reasonably believed to be in the best interest of the corporation.

Tex. Bus. Orgs. Code § 22.221.[14] Immunity is ordinarily an affirmative defense. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). An affirmative defense constitutes an independent reason why a plaintiff should not recover. *Haver v. Coats*, 491 S.W.3d 877, 881 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Generally, a party asserting an affirmative defense has the burden of pleading and proving the defense. *Id.* However, courts have held that the statutory protection in section 22.221 does not constitute an affirmative defense. *See Burns v. Seascape Owners Ass'n, Inc.*, No. 01-11-00752-CV, 2012 WL 3776513, at *9 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.); *Priddy v. Rawson*, 282 S.W.3d 588, 594-95 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (statutory language makes clear that party seeking to impose liability on director bears

---

[14] The statute provides that "board of directors" means the group of persons vested with the management of the affairs of the corporation, regardless of the name used to designate the group. Thus, the members of the POCI's board are covered by the statute.

11

burden of proof). Instead, this "safe harbor" provision places the burden of proof on the person seeking to impose liability on a director. *Priddy*, 282 S.W.3d at 594 n.11. Thus, the plaintiff has the burden of proof to show that a director of a non-profit corporation did not act (1) in good faith, (2) with ordinary care, and (3) in a manner he reasonably believed to be in the best interest of the corporation. *Id.* at 594. To survive the no-evidence motions for summary judgment on all its claims, the Greens had the burden to produce competent summary judgment evidence showing that a genuine issue of material fact existed with regard to whether the Member Defendants did not act (1) in good faith, (2) with ordinary care, and (3) in a manner they reasonably believed to be in the best interest of the corporation. *See id.*; *see also* Tex. Bus. Orgs. Code § 22.221.

In their response to the Member Defendants' motions for summary judgment, the Greens did not address immunity under the safe harbor provision of section 22.221. Instead, the response included arguments addressing the Member Defendants' claim of immunity under chapter 252 of the Business Organizations Code (governing unincorporated nonprofit associations), chapter 84 of the Texas Civil Practice and Remedies Code (the Charitable Immunity and Liability Act of 1987), and 42 U.S.C. § 14501 (the Volunteer Protection Act). The summary-judgment response did not identify any summary-judgment evidence that the Greens assert raises a genuine issue of material fact regarding whether the Member Defendants acted in good faith, with ordinary care, or in a manner they reasonably believed to be in the best interest of the association. Because the Greens did not address the chapter 22.221 immunity argument, they failed to carry their burden of showing that the Member Defendants were not entitled to immunity and the trial court properly granted summary judgment on that ground.

12

In their brief on appeal, the Greens state that "the evidence from [the Greens] of the defamatory statements, failure to comply with governing documents, failing to properly repair and maintain the building exteriors, failure to insist on compliance with manufacturers' best practices and with industry standards, providing misinformation about the need for repairs, misappropriation of funds, and self dealing at a minimum raise a fact issue on whether the [Member Defendants] acted with ordinary care and in good faith." The Greens include a record cite that does not correspond to any summary-judgment evidence submitted to the trial court. There is no citation to any legal authority or other evidence to support the Greens' position on appeal. As an appellate court, it is not our duty to perform an independent review of the summary-judgment record for evidence supporting appellants' position. *See King v. Wells Fargo Bank, N.A.*, 205 S.W.3d 731, 735 (Tex. App.—Dallas 2006, no pet.). Thus, even in the event the Greens had presented sufficient evidence to the trial court to survive summary judgment, they have failed to adequately brief this issue on appeal and, in doing so, have waived error. *See* Tex. R. App. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). The trial court properly granted summary-judgment on the Greens' claims against the Member Defendants arising out of their conduct that took place after the incorporation of the Port of Call Homeowners Association in 2013.

With regard to acts of the Director Defendants prior to incorporation of the association, the Greens alleged breach of the Governing Documents, breach of fiduciary duty, and

13

violation of the Debt Collection Practices Act.[15] The trial court properly granted summary judgment on the breach of fiduciary duty claim because the Greens did not cite, nor have we found, any authority for the proposition that a director of an unincorporated property owner's association owes a fiduciary duty to individual property owners. *See Garst v. Reagan*, No. 03-13-00243-CV, 2014 WL 902554, at *3 (Tex. App.—Austin Mar. 6, 2014, no pet.) (mem. op.) (declining to hold that director of unincorporated property owner's association owes fiduciary duty to property owners). With regard to the Greens' claim that the Member Defendants breached the Governing Documents, the Greens assert that the restrictive covenants in place prior to POC's incorporation satisfy an element of a breach of contract claim; i.e., that there is a valid contract between the Greens and the Member Defendants. Nothing in the restrictive covenants, however, purports to create a contract between the Greens and the individual Member Defendants or vests in the Greens the right to sue the individual Member Defendants to enforce the covenants. To the extent that the Greens complain that the Member Defendants failed to enforce the restrictive covenants, POC, even pre-incorporation, is a separate legal entity from the Member Defendants. *See* Tex. Bus. Orgs. Code § 252.006 (nonprofit association is legal entity separate from its members for purposes of determining and enforcing rights, duties, and liabilities in contract and tort). Texas courts have held that declarations of covenants and restrictions do not create a contract between owners but, instead, may create an agreement between each owner and the association. *See Schindler v. Baumann*, 272 S.W.3d 793, 795 (Tex. App.—Dallas 2008, no pet.). The trial court properly granted summary

---

[15] The trial court granted summary judgment on the DCPA claim for some, but not all, of the named defendants. The DCPA claims against the defendants who did not prevail on summary judgment were adjudicated in a bench trial.

14

judgment on the Greens' claims of breach of contract and breach of fiduciary duty arising pre-incorporation of the POCI.

### *Tort Claims Against POC and POCI*

The trial court concluded that the Greens' tort claims against POC and POCI were barred by the economic loss rule. The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists of the economic loss of a contractual expectancy. *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). In this case, the Greens alleged that the Governing Documents created a contractual duty between them and POC and POCI. The Greens made no argument in their response to the motion for summary judgment addressing the economic loss rule. In response to POC and POCI's traditional and no-evidence motions for summary judgment, the Greens submitted the following summary-judgment evidence: (1) the affidavit of George Green, and (2) a report prepared by Vernon L. Dunagin, a consulting architect. The Greens contend that their damages resulting from the alleged breach of the Governing Documents are in the nature of failure to preserve association property, improper use of association dues, improper assessments, and mishandled finances. The Greens' summary judgment response does not provide evidence of any damages beyond those that would be available for breach of the alleged contract between them and either POC or POCI. Thus, the trial court properly granted summary judgment in favor of POC and POCI on the Greens' tort claims against them.

15

***Claims Against Alliance Association Management Company***

The Greens brought Alliance into the litigation in their third amended petition. Other than the addition of Alliance as a party, the third amended petition is not materially different from the first amended petition. In their fourth amended petition, the Greens explained that Alliance was added to the lawsuit based on its status as the "agent for [POC and POCI]" for whose acts POC and POCI are responsible. At the time the summary judgment motions were heard, the Greens had filed their first supplemental original petition, which expressly stated that at all relevant times the Alliance was acting as either the agent of or as a director or officer of POC and POCI. Specifically, the Greens alleged:

> [Appellants] would show that [Alliance] and the individual Defendants, purportedly acting as officer and directors of [POC and POCI], had the authority to act on behalf of [POC and POCI] or had, through lack of due care, implied such actions were authorized. These acts were performed to further [POC and POCI's] business, to accomplish the objective which they sought to accomplish, and was within the course and scope of that course of conduct or within the authority delegated to them as agents, officers and/or directors of [POC and POCI].

Alliance filed a combined traditional and no-evidence motion for summary judgment asserting the same immunity arguments made by the Member Defendants. Alliance argued that it and its employees Harold Brown, Sharon Murphy, and Joe Balderas, had been sued solely in their capacity as agents or officers/directors of POC and POCI and were likewise entitled to immunity. The motion also asserted that the Greens did not have any evidence to support their claims for breach of fiduciary duty because there was no evidence of any relationship between Alliance and the Greens that would give rise to such a duty. The trial court granted both the traditional and no-evidence motions.

16

On appeal, the Greens assert that Alliance, Brown, Murphy, and Balderas are not entitled to the same immunity from suit as the Member Defendants because they did not "show any connection to POC when it was unincorporated." This argument is belied by the very basis for the Greens' having added Alliance and its employees to the lawsuit; that is, that they acted as agents for POC and that their actions were in the course and scope of conduct they engaged in pursuant to authority delegated to them by POC. The Greens have not provided any argument or authority that demonstrates that the trial court erred in concluding that Alliance and its employees, who were acting as agents of POC and POCI and within the course and scope of their delegated authority, were, like the Member Defendants, immune from liability to the Greens. Summary judgment against the Greens on their claims against Alliance and its employees was proper.

### *Lack of Standing to Enforce Restrictive Covenants*

The Greens also challenge the trial court's summary judgment in favor of Harig, Buchholtz, McElroy, Jacobs, Rockwood, Taylor, Carothers, Alliance, Murphy, Brown, Balderas, and Niemann & Niemann on the ground that they lacked standing to enforce the Restrictive Covenants. The Greens argue that the language of the declarations setting out the covenants and restrictions allows an enforcement action by owners of property subject to the declarations. Based on this language, the Greens assert that they have standing "to enforce the restrictions as a contractual agreement between Appellants and these Appellees." However, the issue is whether the Greens have the authority, as an owner of property subject to the declarations, to enforce the covenants and restrictions against individuals and entities that have a legal existence separate from POC and POCI. Standing considers not only a party's right to bring a claim, but whether the claim involves a

17

justiciable legal dispute between the named parties and whether the controversy can be resolved by the relief sought. *See Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). Texas courts have held that declarations and related covenants do not create a contract between owners (or unrelated entities) but instead may constitute an agreement between each owner and the relevant association. *See Schindler*, 272 S.W.3d at 795 (declaration does not constitute contract between owners). Thus, the Greens have no standing to attempt to enforce restrictive covenants through claims against the individual board members or unrelated entities such as Alliance and Niemann & Niemann or their employees. *See* Tex. Bus. Orgs. Code §§ 22.152 (members of nonprofit corporation not personally liable for obligation of corporation), 252.006 (nonprofit association is legal entity separate from its members). The trial court properly granted summary judgment against the Greens on the claims they asserted against these defendants that seek to enforce the Restrictive Covenants.

### Claim to Enforce Restrictive Covenants Against POC and POCI

The Greens asserted that they could bring causes of action to enforce the Restrictive Covenants against POC and POCI pursuant to Texas Property Code section 202.004. This section provides:

> A property owners' association or other representative designated by an owner of real property may initiate, defend, or intervene in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the restrictive covenant.

Tex. Prop. Code § 202.004(b). Individual property owners like the Greens are not identified in the statute as persons or entities who are authorized to bring suit under the statute. *See Hawkins v.*

18

*Walker*, 233 S.W.3d 380, 389-90 (Tex. App.—Fort Worth 2007, no pet.) (individual property owners not persons authorized by statute to bring suit under section 202.00); *Quinn v. Harris*, No. 03-98-00117-CV, 1999 WL 125470, at *7-8 (Tex. App.—Austin Mar. 11, 1999, pet. denied) (mem. op., not designated for publication) (enforcement actions may be instituted by property owners' association or owners' representatives, not individual homeowners). The trial court properly granted summary judgment on the Greens' claims brought pursuant to Texas Property Code chapter 202.

***Alleged Breach of the "$2,500 Rule"***

The Greens asserted that the defendants breached the Governing Documents by spending more than $2,500 without the approval of the homeowners, a violation of the "$2,500 Rule."[16] The trial court granted traditional and no-evidence motions for summary judgment on this claim. Section 202.006 of the Texas Property Code requires that a property owners' association "shall file all dedicatory instruments in the real property records of each county in which the property to which the dedicatory instruments relate is located." Tex. Prop. Code § 202.006. The statute defines "dedicatory instrument" as any document governing the operation of a development or subdivision. *Id.* § 202.001(1); *see Goddard v. Northhampton Homeowners Assoc., Inc.*, 229 S.W.3d 353, 358 (Tex. App.—Amarillo 2007, no pet.) (treating bylaws as dedicatory instruments). The Greens adduced no evidence that POC or POCI filed any instrument that included the "$2,500 Rule" in the real property records. Instead, the record includes evidence that the "$2,500 Rule" was not filed by

---

[16] According to the Greens, the "$2,500 Rule" was adopted by POC and prohibits the Board of Directors from committing to "any one expenditure that would exceed $2500 without the majority of homeowners approval."

19

POC or POCI. George Green also stated in his affidavit that "my father and I recorded this rule."

Thus, there was conclusive evidence that the "$2,500 Rule" was not filed by the property owners'

association as required by statute and, consequently, had no effect. The trial court properly granted

summary judgment on the Greens' claim for breach of the "$2,500 Rule."

### *Conversion and Theft Liability Act Claims*

The trial court granted no-evidence motions for summary judgment on the Greens'

claims of conversion and violation of the Texas Theft Liability Act. *See* Tex. Civ. Prac. & Rem.

Code § 134.003 (person who commits theft is liable for resulting damages). In their brief on appeal,

the Greens assert that the trial court erred because there was evidence that POC, POCI, and Carothers

"misappropriat[ed] money under the $2,500 Rule" and made assessments that, in the Greens'

opinion, were for work that was unnecessary and not completed. The Greens do not explain how

this evidence creates a fact issue regarding each of the elements of a claim for conversion or

violation of the Theft Liability Act. *See Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex.

App.—Austin 1997, writ denied) ("To establish conversion of personal property, a plaintiff

must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to

possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion

and control of the property to the exclusion of, or inconsistent with the plaintiff's rights as an owner;

(3) the plaintiff demanded return of the property; and (4) the defendant refused to return the

property."); *see also* Tex. Civ. Prac. & Rem. Code §134.003 (person who commits theft is liable for

resulting damages); Tex. Penal Code § 31.03 (theft is defined as unlawfully appropriating property

with intent to deprive owner of property and appropriation of property is unlawful if it is without

owner's effective consent).  The trial court properly granted the no-evidence motions for summary judgment on the Greens' conversion and theft liability claims.

### *Claims of Civil Conspiracy and Joint Venture*

A civil conspiracy involves a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.  *See West Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied).  The trial court granted no-evidence motions for summary judgment on this claim.  In their appellate brief, the Greens do not cite to any evidence in the summary-judgment record that they assert creates a fact issue on any of these elements.  The trial court concluded that Green's affidavit did not constitute evidence of conspiracy.  We agree that Green's affidavit provided no evidence of the nature of any alleged agreement between any of the defendants, the details of any such agreement, or what illegal objectives the alleged conspirators agreed to achieve.  The Greens' allegations of defamatory statement cannot support the conspiracy claim because they failed to adduce evidence of any particular statement ascribed to any particular defendant, and it is impossible to discern whether the Greens are contending that each of the defendants made defamatory statements or that one of them made a defamatory statement that the Greens ascribe to the others under a conspiracy or joint venture theory.  Moreover, conspiracy is a derivative tort and liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the main defendants liable.  *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).  As previously discussed, the trial court properly granted summary judgment on the Greens'

21

numerous and various tort claims. The trial court likewise did not err in granting summary judgment on the Greens' allegations of conspiracy and joint venture.

We overrule all of the Greens' issues challenging the trial court's summary-judgment order. We next consider the Greens' contentions that the trial court erred in dismissing the defamation claims pursuant to the TCPA. *See* Tex. Civ. Prac. & Rem. Code ch. 27.

### *Motions to Dismiss Under the Texas Citizens Participation Act*

As an initial matter, we consider the Greens' contention that the trial court erred in granting POCI's motion to dismiss because it was not timely filed. A TCPA motion must be filed "on or before 60 days from the date of service of the legal action." *Id.* § 27.003(b). The "legal action" made the subject of POCI's TCPA dismissal motion was the Greens' defamation claim. The Greens first asserted the substance of this defamation claim against POCI through a counterclaim they originally filed in October 2015, in cause number 19124, prior to its consolidation into cause number 18314. POCI did not file its motion to dismiss the defamation claim until March 15, 2016, well beyond the 60 day time limit. The trial court erred in granting POCI's untimely filed motion to dismiss the Greens' defamation claim against it.

The Greens next assert that the trial court erred in concluding that the TCPA applied to their defamation claims against the various defendants because, according to the Greens, their claims fall within the statute's "commercial speech" exemption. *See* Tex. Civ. Prac. & Rem. Code § 27.010(b) (statute does not apply to legal action brought against person primarily engaged in business of selling or leasing goods or services if statement or conduct arises out of sale or lease of goods, services, or insurance product, insurance services, or commercial transaction in which

22

intended audience is actual or potential buyer or customer). The Texas Supreme Court has recently explained that the commercial speech exception "applies only to *certain* communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual, but as 'commercial speech which does "no more than propose a commercial transaction."'" *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 690 (Tex. 2018) (emphasis in original). The allegedly defamatory statements the Greens identify as the basis of their claim do not meet this standard. For example, the Greens assert that members of the homeowners' association accused George Green of stealing documents, destroying and vandalizing private property, and failing to pay bills and assessments due. The Greens also assert that members of the homeowners' association "accused" Garlan Green of being senile and George Green of being crazy, needing mental health assistance, abusing his father, and being a liar. There is no evidence, nor can it be reasonably inferred, that these alleged statements were made in the context of proposing a commercial transaction, as required to fall within the commercial speech exemption of the TCPA. *See id.* at 688 (exemption applies when statement or conduct at issue arose out of commercial transaction involving kind of goods or services defendant provides).[17]

Finally, the Greens argue that the trial court erred in granting the motion to dismiss because they met their burden of establishing a prima facie case of defamation. In reviewing a

---

[17] We also reject the Greens' argument that the TCPA does not apply to their defamation claim. The defendants are a homeowners' association and its members and the alleged agents of the association. The TCPA applies to legal actions based on, related to, or in response to a party's exercise of the right of association. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a). "Exercise of right of association" is defined by the statute to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend a common interest." *Id.* § 27.001(2). The allegedly defamatory statements forming the basis of the Greens' claims plainly fall within this definition.

motion to dismiss under the TCPA, the trial court is directed to dismiss the suit unless "clear and specific evidence" establishes the claimant's "prima facie case." Tex. Civ. Prac. & Rem. Code § 27.005(c). "The TCPA's direction that a claim should not be dismissed 'if the party bringing the legal action establishes by *clear and specific evidence a prima facie case* for each essential element of the claim in question' thus describes the clarity and detail required to avoid dismissal." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (emphasis in original). The elements of a defamation claim include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). The trial court granted several motions to dismiss filed by several of the defendants. On appeal, the Greens' argument is composed of one three-sentence paragraph that states that "the Appellants' evidence submitted in response to the motions to dismiss, at a minimum, establish the when, where, what was said, and the defamatory nature of the statements," that "[A]ppellants submitted clear and convincing proof establishing a prima facie case of the repeated publication of defamatory, false statements of fact to third parties about the Appellant," and that the "motions to dismiss the defamation claims under Chapter 27 should have been denied." The Greens do not attempt to address the individual motions, identify the statements attributable to each defendant that they allege are false, present any evidence regarding the truth or falsity of alleged statements, or discuss how they have been damaged by those statements. The brief is completely devoid of any analysis or discussion of the evidence the Greens assert satisfies their burden of establishing by clear and specific evidence a prima facie case for each essential element of each of the claims against the various defendants that filed a motion to dismiss.

24

*See* Tex. Civ. Prac. & Rem. Code § 27.005(c). The Greens' conclusory statements unsupported by citations to the record or by legal citations do not comply with appellate briefing requirements. *See* Tex. R. App. P. 38.1(i). Because the Greens' complaints regarding the trial court's granting the motions to dismiss filed by the various defendants are inadequately briefed, they are waived.[18]

**Bench Trial on Debt Collection Practices Act Claim**

The Greens argue that the trial court erred in rendering a take-nothing judgment on their claim of violations of the Texas Debt Collections Practices Act. *See* Tex. Fin. Code §§ 392.001-.404. The DCPA applies only to consumer debts. *See id.* § 392.001, .301. A "consumer debt" is an obligation or an alleged obligation primarily for personal, family, or household purposes and "arising from a transaction or alleged transaction." *Id.* § 392.001(2). After conducting a bench trial, the court filed findings of fact and conclusions of law, one of which stated that "all monetary amounts demanded by Defendants and charged to Plaintiff's account are 'assessments' as that term is defined in Section 82.113(a) of the [Uniform Condominium] Act." The trial court also found that the assessments were levied pursuant to the homeowners' association's governing documents and state law. The Greens do not challenge these conclusions. Section 82.113(a) provides:

> An assessment levied by the association against a unit or unit owner is a personal obligation of the unit owner and is secured by a continuing lien on the unit and on

---

[18] We note that the paragraph constituting the Greens' argument contains a record cite that does not correspond to any evidence submitted to the trial court in response to the motions to dismiss. The clerk's record in this case is composed of nine volumes and over 2,500 pages. An appellate court is not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party's argument. *Hall v. Stephenson*, 919 S.W.2d 454, 466-67 (Tex. App.—Fort Worth 1996, writ denied); *Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 886 (Tex. App.—Houston [1st Dist.] 1995, no writ).

25

rents and insurance proceeds received by the unit owner and relating to the owner's unit. In this section, "assessments" means regular and special assessments, dues, fees, charges, interest, late fees, fines, collection costs, attorney's fees, and any other amount due to the association, all of which are enforceable as assessments under this section unless the declaration provides otherwise.

Tex. Prop. Code § 82.113(a). Assessments, dues, fees, charges, interest, late fees, fines, collection costs, and attorney's fees assessed by a homeowners' association pursuant to declarations governing the association or state law do not "arise from a transaction" and thus do not constitute "consumer debt." Because the DCPA does not apply to debts that are not "consumer debts," the trial court did not err in rendering judgment that the Greens take nothing on their claims for violation of the DCPA.[19]

### Attorneys' Fees

The Greens challenge the trial court's conditional award of appellate attorneys' fees to each of the defendants in the event the Greens are unsuccessful in an appeal of any of the trial court's rulings other than its disposition of the defamation claims. According to the Greens, there was no legal basis for this award. Several of the defendants counter that the DCPA provides that the trial court "shall award" attorneys' fees if it finds that the action was brought in bad faith or for purposes of harassment. See Tex. Fin. Code § 392.403(c). The trial court, however, made no such express finding. Moreover, the fact that the trial court declined to award attorneys' fees associated with trial of the case for any of the claims other than those awarded pursuant to the TCPA indicates that it did not make an implicit finding of bad faith or harassment. Consequently, we modify the judgment to

---

[19] For the same reason, the trial court did not err in granting Alliance's no-evidence motion for summary judgment on the DCPA claim.

26

remove the conditional award of appellate attorneys' fees to each of the defendants in the event of an unsuccessful appeal of the trial court's rulings on any issue other than the defamation claim.

## CONCLUSION

We overrule the Greens' challenges to (1) the trial court's rulings on the summary-judgment motions filed by the various defendants on the numerous causes of action asserted against them by the Greens, (2) the trial court's rulings on the motions to dismiss the defamation claims pursuant to the TCPA, except for its ruling on POCI's untimely filed motion to dismiss, and (3) the trial court's entry of a take-nothing judgment on the Greens' claims under the DCPA. We reverse the dismissal of the Greens' defamation claim against POCI and remand that issue for further proceedings. Having sustained the Greens challenge to the trial court's conditional award of appellate attorneys' fees in the event of an unsuccessful appeal of the trial court's ruling on any issue other than the defamation claim, we modify the judgment to remove that conditional award as to each defendant. The remainder of the trial court's judgment is affirmed.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Modified and, as Modified, Affirmed in Part; Reversed and Remanded in Part

Filed: August 29, 2018

27