# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00295-CV

---

**Juan Enriquez, Appellant**

**v.**

**The University of Texas System Board of Regents, James B. Milliken, and Dr. Erin Jones, Appellees**

---

**FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY,**
**NO. D-1-GN-16-005852 THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Juan Enriquez filed suit, complaining that persons in the Texas prison system and the University of Texas System and Medical Branch were deliberately indifferent to his medical needs and violated his constitutional rights. He sought equitable and injunctive relief and a writ of mandamus to correct those acts and omissions as well as monetary damages for the violations of his rights. Appellees—the University of Texas (UT) System Board of Regents, UT System Chancellor James B. Milliken, and UT Medical Branch (UTMB) physician Erin Jones—filed a plea to the jurisdiction, a traditional motion for summary judgment, a motion to dismiss, and a motion to sever. The trial court severed the claims against these appellees into a separate cause. The court then granted their plea to the jurisdiction, motion for traditional summary judgment, and motion to dismiss without specifying a particular basis.

Enriquez argues on appeal that the trial court had subject-matter jurisdiction over his claims for equitable and mandamus relief under the Texas Constitution and for damages under the United States Constitution and that genuine issues of material fact persist on his claims. We will affirm the judgment.

## BACKGROUND

Enriquez was convicted of murder in 1966 and sentenced to death. He was later sentenced to 99 years in prison for murder. In 1972, his death sentence was commuted to life in prison by the governor. *Ex parte Enriquez*, 490 S.W.2d 546, 547 (Tex. 1973).

Enriquez filed this suit on December 5, 2016, against the chairman of the Texas Board of Criminal Justice; the executive director, the medical director, and a former warden of a unit of the Texas Department of Criminal Justice (TDCJ); and doctors at UTMB who provide medical care and treatment to prisoners under a contract with TDCJ. Enriquez complained that his constitutional rights were violated by the denial of air-conditioned housing and transportation; the denial of his right to petition the government; and the denial of Texas Bill of Rights protections to due course of law, equal protection, free expression, and freedom from cruel and unusual punishment.

In his second amended complaint and two supplements, Enriquez added complaints about acts and omissions by appellees. Enriquez laid out a series of interactions with UTMB's provision (or non-provision) of medical services to him as an inmate of TDCJ.[1] He

---

[1] We will discuss the allegations and evidence in more depth when evaluating the summary judgment. The allegations underlying this cause have been set out extensively in other appellate court opinions in cases also severed from the original cause and, in some instances, transferred to other courts. *See Enriquez v. Morsy*, Nos. 01-22-00622-CV & 01-22-00852-CV, 2023 WL 7311220, at *1-6 (Tex. App.—Houston [1st Dist.] Nov. 7, 2023, no pet. h.) (mem.

began with his complaints to infirmary staff that he was sick, had lost his appetite, tasted a metallic tinge to his food, had high blood pressure, saw light and black holes, had chills, was constantly cold, and could barely walk. After a December 23, 2014 examination, a doctor requested an expedited transfer of Enriquez to a hospital for a urology examination based on a provisional diagnosis of prostate cancer supported by an elevated Prostate Specific Antigen (PSA) level, incontinence, and severe headaches. Enriquez alleged a series of refusals to offer or provide him treatments. He alleges that the failures to adequately treat his conditions caused him difficulties in urinating that led to further significant injury and unnecessary pain. The additional injuries alleged include acute kidney failure and benign prostatic hyperplasia, both diagnosed in January 2015; anemia from kidney damage diagnosed in March 2015; a urinary tract infection (UTI) in October 2015; and an epididymis infection in October 2015 and February-March 2016. Enriquez alleged that the antibiotics did not "start" to resolve the epididymis infection for over 30 days after his March 7, 2016 examination—the last date of any medical appointment alleged in his Second Amended Petition.

Enriquez sued Jones in her individual capacity for damages and in her official capacity for injunctive and declaratory relief. He also asserted, "The Regents of the University of Texas, through James S. Milliken, Chancellor, UT, is sued in his individual capacity," and that

---

op.); *Enriquez v. Morsy*, No. 01-18-00877-CV, 2020 WL 4758428, at *1-6 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, no pet.) (mem. op.); *Enriquez v. Orihuela*, No. 14-18-00147-CV, 2019 WL 6872946, at *1-5 (Tex. App.—Houston [14th Dist.] Dec. 17, 2019, pet. denied) (mem. op.); *Enriquez v. Wainright*, No. 03-18-00189-CV, 2018 WL 6565017, at *1-2 (Tex. App.—Austin Dec. 13, 2018, no pet.) (mem. op.). Because the allegations concern sensitive medical history, we will limit our discussion to allegations necessary to the disposition of the issues on appeal.

"[t]he Regents and Milliken are sued for damages in their individual capacity and for injunctive and declaratory relief in their official capacity."

Enriquez requested an array of relief against these appellees. He described several causes of action and listed the relief he sought separately. He sought a declaration that the refusal to provide him with the same level of medical treatment available to non-prisoner patients of UTMB violates his right to equal treatment, to be free from cruel and unusual punishment, and to be free from retaliation for filing this lawsuit. He sought unspecified equitable relief. He sought these writs of mandamus relevant to these appellees:

- directing the Board of Regents to comply with statutory requirements that prisoners get the same treatment and have the same procedures available to them as non-prisoner patients of UTMB;

- ordering Jones (and other doctors) to provide a comprehensive evaluation of his kidney damage and appropriate treatment, but which evaluation or treatment shall be done by non-TDCJ and non-UTMB doctors to whom prisoner patients are referred; and

- directing Jones (and other doctors) to provide him with medicine, to which he is not allergic and that is available to non-prisoners, to treat benign prostatic hyperplasia.

Enriquez requested nominal damages of $10,000, actual damages of $3 million, and exemplary damages of $9 million against the Regents and Jones (and other severed defendants).

The Board of Regents, Milliken, and Jones argued that they are entitled to sovereign immunity from Plaintiff's request for unspecified equitable relief under article 1, Section 29, of the Texas Constitution. Appellees further contended that they are entitled to sovereign immunity from Plaintiff's request for writs of mandamus. The Board of Regents argued that it is entitled to sovereign immunity from Enriquez's claims under 42 United States

4

Code Section 1983. Milliken and Dr. Jones argued that they are entitled to qualified immunity from Plaintiff's Section 1983 claim. Appellees moved for summary judgment on the Section 1983 claims, asserting that they are barred by the statute of limitations. They further urged that none of these appellees was personally involved in the delivery of Plaintiff's medical treatment or in the events, transactions, or circumstances that form the basis of Plaintiff's Section 1983 claim. They further urged that Enriquez's Section 1983 claims fail as a matter of law because he has been offered extensive medical treatment for his medical conditions. Appellees' motion to dismiss compiled the relief requested under the jurisdictional plea and the summary-judgment motion and did not state an independent basis for dismissal.

The trial court severed the causes of action against the Board of Regents, Milliken, and Jones from the claims against other defendants. The court then granted the plea to the jurisdiction and motion for summary judgment on all claims against these appellees without specifying a basis.

## DISCUSSION

Enriquez raises three issues on appeal: 1) Whether the trial court had subject-matter jurisdiction over his claims for equitable relief; 2) whether the trial court had subject-matter jurisdiction over his claim for mandamus relief; and 3) whether the trial court had subject-matter jurisdiction over his claims for damages under Section 1983.[2] In his reply brief, he

---

[2] In his Second Amended Petition, Enriquez sought various declarations, but he did not raise the trial court's disposition of his declaratory requests as an issue on appeal. He mentions "declaratory relief" and "declaratory judgment" in his initial brief only in quotations from his trial-court pleadings and in his reply brief only in summarizing the relief requested generally. But he does not make arguments regarding how the trial court erred in disposing of those requests for declarations. The Texas Supreme Court has long held that an action for a declaratory judgment is neither legal nor equitable but is sui generis. *Cobb v. Harrington*,

5

contends that his claims are ongoing and thus are not subject to summary judgment on limitations; that he presented evidence of deliberate indifference to his medical needs in violation of the Eighth Amendment; and that the appellees' summary-judgment evidence was inadmissible, irrelevant, and not based on personal knowledge. We will examine whether the trial court erred if it dismissed the cause for want of jurisdiction before addressing the summary-judgment issues. We will address the causes of action through the filter of the relief requested to structure our review.

## I.      Plea to the jurisdiction

In their plea to the jurisdiction, appellees claimed that they were entitled to sovereign immunity from Enriquez's claims for equitable relief for violations of the constitution and from his request for writs of mandamus. "In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). "Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Id.* at 225-26. The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction, *Heckman v. Williamson County.*, 369 S.W.3d 137, 150 (Tex. 2012), which encompasses the burden of

190 S.W.2d 709, 713 (Tex. 1945). Accordingly, the arguments regarding errors in the disposition of the requests for equitable, mandamus, and damages relief do not present arguments for errors in the disposition of the requests for declaratory relief. *See State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008) (observing that "[a] party generally is not entitled to relief it does not seek" and refusing to sua sponte grant relief that was not sought); *DiGiuseppe v. Lawler,* 269 S.W.3d 588, 597 n.10 (Tex. 2008) (noting that ordinarily, failure to brief an argument waives error on appeal). We conclude that Enriquez does not present issues or argument showing error requiring reversal of the trial court's disposition of his requests for declaratory relief. *See* Tex. R. App. P. 38.1.

establishing a waiver of sovereign immunity in suits against the government, *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

Because whether a court has subject-matter jurisdiction is a question of law, we review the grant of the plea to the jurisdiction de novo. *Miranda*, 133 S.W.3d at 225. A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Id.* When a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction. *Id.* We construe the pleadings liberally in the plaintiff's favor and in favor of jurisdiction, looking to the plaintiff's intent. *See City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008). If the jurisdictional plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim. *Alamo Heights ISD v. Clark*, 544 S.W.3d 755, 770-71 (Tex. 2018). When the defendant uses evidence to support its jurisdictional plea, our standard of review mirrors that of a traditional summary judgment. *Id.* at 771. If the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction. *Id.* (quoting *Miranda*, 133 S.W.3d at 221). We must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id.* If the evidence creates a fact question on the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227-28. But if the relevant evidence is undisputed or does not raise a fact question on jurisdiction, we rule on the plea as a matter of law. *See id.* at 228. "Our ultimate

inquiry is whether the particular facts presented, as determined by the foregoing review of the pleadings and any evidence, affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Bacon v. Texas Hist. Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.).

### A. Equitable relief

Enriquez contends that the trial court had subject-matter jurisdiction over his claims for equitable relief (including prospective injunctive relief) against appellees in their official capacities under the Texas Constitution, citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex. 1995). While the Texas Bill of Rights does not imply a private cause of action for damages, "suits for equitable remedies for violation of constitutional rights are not prohibited." *Id.* at 149.

The provisions and guarantees of the Texas Bill of Rights are self-executing, rendering any contradictory act or law void. *Id.* at 148-49; *see also* Tex. Const. art. I, § 29. To the extent that Enriquez's requests for equitable relief seek to restrain official conduct that is *ultra vires* of a state agency's statutory or constitutional powers, they must be asserted against a state official in his or her official capacity, and sovereign immunity bars such a claim if asserted against the agency itself. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009). To fall within the *ultra vires* exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* A state official acts without legal authority when, while having some discretion to interpret and apply a law, the officer "exceeds the bounds of [his or her] granted authority or if [his or her] acts conflict with the law itself."

*Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). Suits to require state officials to comply with statutory or constitutional provisions—i.e., to correct *ultra vires* conduct—are not barred by sovereign immunity. *Heinrich*, 284 S.W.3d at 372.

Enriquez requests unspecified injunctive or equitable relief against all three appellees—including the Board—in their official capacity. Whether appellees' acts or omissions are *ultra vires* and justify injunctive or equitable relief is a question for the merits. *Cf. Enriquez v. Wainwright*, No. 03-18-00189-CV, 2018 WL 6565017, at *1-2 (Tex. App.—Austin Dec. 13, 2018, no pet.) (mem. op.) (concluding that whether government officials' acts or omissions were type of actions that warranted mandamus relief was merits issue, not jurisdictional). Because some form of equitable relief is theoretically available against all three appellees depending on the evidence introduced on the allegations, we conclude that Enriquez's requests for equitable or prospective injunctive relief permitted the trial court to exercise jurisdiction. We do not know whether the trial court dismissed the request for equitable relief for want of jurisdiction, but if it did, it erred.

### B.     Mandamus relief

Enriquez requested writs of mandamus directing appellees to comply with law or the constitutional guarantees. He requested a writ directing the Board of Regents to comply with Government Code Section 501.051. He requested a writ directing Jones to comply with the mandates of *Estelle v. Gamble*, in which the court concluded that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976) (internal citation omitted)).

9

District courts have jurisdiction to issue writs of mandamus to compel a public official to perform a ministerial act or to correct a clear abuse of discretion—though not to compel a particular result from an exercise of discretion. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). As we concluded separately with regard to other defendants in a severed portion of this case, the trial court has jurisdiction to consider whether appellees' challenged acts or omissions were failures to perform a ministerial act or were clear abuses of discretion. *Wainwright*, 2018 WL 6565017, at *1-2.[3]

We do not know whether the trial court dismissed these requests for writs of mandamus for want of jurisdiction, but if it did, it erred.

## C.    Damages

Enriquez sought damages from all three appellees through a private right of action for violations of the United States Constitution under Section 1983.

The Board of Regents is immune from Enriquez's damages claims. Section 1983 creates a cause of action for deprivations of constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

---

[3] We disagree with appellees' assertion that our *Wainwright* decision conflicts with the Supreme Court's holding in *Heinrich* that a claimant must "allege, and ultimately prove that the officer acted without legal authority or failed to perform a purely ministerial act" to fall within the *ultra vires* exception to sovereign immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). In *Wainwright*, we held that the determination of whether the plaintiff has pleaded and proved entitlement to the performance of a ministerial act is a merits determination, not an issue of subject-matter jurisdiction suitable for a jurisdictional plea. *Enriquez v. Wainwright*, No. 03-18-00189-CV, 2018 WL 6565017, at *2 (Tex. App.—Austin Dec. 13, 2018, no pet.) (mem. op.). Our *Wainwright* decision is consistent with the holding of *Heinrich*.

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Neither a State nor its officials acting in their official, versus individual, capacities are "persons" under Section 1983. *University of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 469 (Tex. App.—Fort Worth 1997, writ denied). The Board of Regents is an agency of the State, and suit against the Board is a suit against the State. *See* Tex. Educ. Code § 65.11 (authorizing Board of Regents); *cf. Martine v. Board of Regents, State Senior Colls. of Tex.*, 578 S.W.2d 465, 470 (Tex. App.—Tyler 1979, no writ) (concerning Texas State University System Board of Regents). Enriquez did not sue or name any individual member of the Board of Regents, suing the Board "through" Milliken, who is sued for damages in *his* individual capacity. The individual board members were not sued in their individual capacities, and there is no indication in the record that they were served with process as individuals. The Board is a state entity entitled to sovereign immunity on these claims under Section 1983 as pleaded. *See Martine*, 578 S.W.2d at 469-70.

We do not find a plea to the jurisdiction from Milliken or Jones on this claim.[4] Milliken and Jones contend that they have qualified immunity, which is an affirmative defense to liability for damages in a Section 1983 claim. *See Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009); *Escobar v. Harris County*, 442 S.W.3d 621, 629 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The defense of qualified immunity shields government officials performing

---

[4] Early in their plea, Milliken and Jones asserted that they "were not personally involved and were not responsible for the medical treatment that gave rise to Enriquez' complaint. This defeats Enriquez' claim as matter of law and entitles Chancellor Milliken and Dr. Jones [to] official immunity from the 1983 claim." That argument is for a determination on the merits of Enriquez's claim, not a jurisdictional plea, and is inconsistent with their later stated "issue presented" and argument that asserted only qualified immunity.

11

discretionary functions within the scope of their authority from individual liability for civil damages under Section 1983 as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 128 (Tex. 2015). Qualified immunity is a defense to liability, not an assertion of a lack of jurisdiction. *See Texas Dep't of Crim. Just. v. Thomas*, 263 S.W.3d 212, 219-21 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). We will consider the plea of qualified immunity in the summary-judgment discussion below.

The trial court did not err by dismissing Enriquez's claim for damages against the Board of Regents under Section 1983 for want of jurisdiction.

## II.     Summary judgment

Appellees moved for summary judgment on grounds that appellees did not violate Enriquez's constitutional rights or commit any *ultra vires* acts, were not personally involved in the delivery of medical treatment to Enriquez, and did not show deliberate indifference to his medical needs. Milliken and Jones argued that they were entitled to qualified immunity.[5]

A party moving for traditional summary judgment must establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). When defendants move for summary judgment on a plaintiff's claims, the defendants must disprove at least one element of each claim as a matter of law. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996). If the defendants meet their burden, the

---

[5] They also asserted a limitations defense, but we do not need to reach that issue of whether the summary judgment was appropriately granted on limitations grounds.

12

plaintiff must respond and present evidence raising a fact issue. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999).

We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take all evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in its favor. *Id.* Where, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Acc. Ins.*, 128 S.W.3d at 216; *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## A.   Summary-judgment record

Enriquez alleged in his live pleadings that the medical treatment he received between November 2014 and March 2016 violated his right to be free from cruel and unusual punishment under the Eighth Amendment. He complained that he was deprived of treatment through denial of transfers pursuant to and in compliance with policies and practices enacted by other defendants. He sought unspecified equitable relief related to his medical treatment and housing conditions and a writ of mandamus compelling appellees to treat him as UTMB treats other non-prisoner patients. He seeks damages of over $12 million.

Appellees attached the affidavits of Glenda Adams and Ronnie Clay Hunt, the declaration of David Callendar, and the TDCJ orientation handbook to their motion; these documents were also part of the record at the summary-judgment hearing. Adams is a physician consultant with UTMB. Hunt is UTMB's human resources manager.

13

Hunt averred that UTMB hired Jones as a doctor for TDCJ inmates on January 7, 2013.  On October 1, 2014, she became the medical director for TDCJ's Ramsey, Terrell, and Stringfellow prison units.   Her duties included examining and treating patients directly; inspecting and analyzing records and making rounds on patients admitted to infirmaries or regional medical facilities; referring patients to specialists; serving in rotation to provide after-hours care; directly supervising all physicians and physician assistants; and overseeing and managing all operations of an assigned unit's medical department.  Jones reported to a regional medical director who reports to the chief medical officer, who works under UTMB's vice president of offender care services.  Hunt averred that Jones "has no duties or responsibilities over the general overall administration of the Correctional Managed Care program, nor does she have any duties or responsibilities over the general overall administration of UTMB."

Adams averred that she had reviewed Enriquez's medical records, Enriquez's pleadings, and Hunt's affidavit.  Adams averred that Jones is not responsible for the administration and enforcement of laws and policies pertaining to UTMB and is not responsible for and does not have authority to change clinical decisions made by UTMB specialty clinic physicians such as urology and nephrology.  Adams also averred that Jones and UTMB are not responsible for Enriquez's assignment to a particular unit of TDCJ.  She stated that UTMB is an independent contractor that provides medically necessary healthcare services to TDCJ prisoners, but that by contract and practice, housing assignments are determined by TDCJ except when a treating physician determines that inpatient care is required.  Adams averred that Enriquez's age (the record reflects that he is in his 70s) and medical conditions qualify him for a "medical unit"—a facility that includes an infirmary and round-the-clock, onsite medical services—and he

14

is assigned to such a unit by TDCJ. Adams reiterated that conditions of confinement such as maintenance and temperature control are TDCJ's responsibilities.

Adams discussed a series of complaints; appointments made, kept, and missed; and treatments requested, proposed, given, and not offered. She attached to her affidavit many pages of Enriquez's medical records, some of which concerned medical treatments more recent than the 2016 allegations. Adams stated that her review of Enriquez's medical records did not reveal any treatment interaction with Milliken or any member of the Board of Regents. Milliken did not become chancellor until September 2018. Adams averred that records showed that Enriquez was transferred to the Terrell Unit (where Jones was medical director) on or about February 10, 2017. Jones saw Enriquez on December 15, 2017, to review his lab results concerning kidney function and a possible urinary tract infection; test results on December 18, 2017, showed improved lab results. She next examined him on September 4, 2018, when he requested testing for his prostate, kidney, and thyroid conditions and complained of cloudy urine and a possible UTI. She ordered tests and requested that he be referred to the UTMB chronic kidney disease clinic; when the tests showed a UTI, another provider started Enriquez on antibiotics. On September 25, 2018, Jones called him to the medical department to discuss his rising PSA levels and to urge him to accept a referral to UTMB's urology clinic to definitively diagnose whether he has prostate cancer. Jones's notes show that Enriquez replied that he had discussed his PSA levels with another provider and would continue to monitor those levels; he signed a Refusal of Treatment form documenting Jones's warnings and his decision to decline the offered service.

Adams noted that Enriquez's benign prostate hyperplasia, acute kidney injury, anemia, and recurrent UTIs began before he was assigned to the Terrell Unit and that all of those

15

conditions except for the prostate issues have all improved since his arrival there, though his prostate issues have required catheterization that has led to recurring UTIs. Enriquez refused to follow Jones's recommendation that he go to the UTMB urology clinic for further evaluation of his prostate condition. She also averred, "There are no governing rules or policies, including but not limited to UTMB or [Correctional Managed Health Care] rules or policies, that have prevented Plaintiff from receiving necessary medical care or that have resulted in his receiving care that is different from the care provided to non-prisoners." She explained that while UTMB has a list of preferred drugs for medical providers to prescribe, when the preferred drugs do not meet the patient's needs and a different drug is deemed necessary by the treating physician, the physician can consult with others to ensure the patient receives a necessary medication. Adams averred that Enriquez has been provided non-listed medications as clinically indicated. She notes that one particular medication Enriquez complains he was denied was the subject of shortages and that he has received that drug before and after the date on which he was not given that drug. Adams also averred that, while a patient's treatment preferences are a major consideration in developing treatment plans, physicians are not obligated to provide medications or treatments that are not in the patient's best interest. She notes that screening tests are required before a particular procedure (e.g., a Urolift) can be authorized, and that Enriquez's continued refusal to allow those screening procedures prevent an informed evaluation of the best treatment plan considering his prostate anatomy, kidney function, and other medical conditions. She concludes that Enriquez, like most patients, lacks "the medical expertise to determine if a particular medicine or procedure is the best option (i.e. safest and mostly likely to be effective) or even a reasonable option for a particular situation."

16

Adams also averred that some of the doctors who "refused" to treat Enriquez did so because he requested that they provide treatments outside their specialty:

> Urologists treat genital and lower urinary tract disorders (e.g. disorders of the prostate, bladder, etc.), and kidney *obstructions* (stones, BPH, etc.). Urologists frequently perform surgical procedures. The kidneys are upper urinary tract organs. Nephrologists are internal medicine subspecialists who treat kidney disorders and associated complications (e.g. anemia, hyperparathyroidism, etc.). Nephrologists do not perform surgical procedures. On May 28, 2015, Doctors Fang and Orihuela simply remained within their specialty (i.e. Urology) scope of practice and addressed Plaintiff's *obstructive uropathy and possible prostate cancer*.

Adams noted that Enriquez was evaluated by a nephrologist during his January 2015 hospitalization. Adams also details a sequence of events in 2018 and 2019 when Enriquez declined a prostate biopsy on grounds that he did not believe he had prostate cancer, but agreed to a multiparametric magnetic resonance imaging (mpMRI) before refusing the mpMRI on February 6, 2019. On February 13, 2019, he again refused a prostate biopsy but inquired about a Urolift procedure to treat his benign prostate hyperplasia. The urologist counseled that an mpMRI was needed before the Urolift could be planned. Adams said that Enriquez declined to do the mpMRI the next day, but agreed to return in a month to have the mpMRI and discuss options; he did not, however, have the mpMRI done for reasons not disclosed on the chart.

Enriquez filed an "affidavit or unsworn declaration" to counter Adams's affidavit.[6] He asserted that he has had an elevated PSA level since 1996, but was told that

---

[6] Enriquez also testified at the hearing, but we cannot consider that testimony when reviewing the summary judgment. Rule of Civil Procedure 166a(c) governing summary-judgment practice expressly provides, "No oral testimony shall be received at the hearing." This rule prevents us from considering oral testimony from the hearing even though the appellees did not object and did not raise this issue in response to Enriquez's appeal. We previously held:

17

prostate cancer is usually slow-moving and that, absent cancer symptoms, he should wait before undergoing a biopsy with its accordant risks of infection and other problems. In late 2014, he was given a provisional diagnosis of prostate cancer, but a January 2015 examination showed no nodules suggestive of prostate cancer and yielded a diagnosis of benign prostatic hyperplasia. Enriquez stated that he returned to his wait-and-see plan and, "[i]n accordance with that decision he refused all unsolicited, unwanted, and unnecessary scheduled urology appointments that had to do with cancer or any related treatment." He said he opted to prioritize treatment for his kidney issues that were a more immediate threat to his life. He asserted that UTMB urologist Dr. Eduardo Orihuela refused to treat his kidney issues, preferring to rule out prostate cancer first; Enriquez asserts that Dr. Orihuela's approach exemplifies UTMB's policy of "holding prisoner patients hostage to treatment that they refuse as is their right to obtain treatment they need and request." Enriquez asserted that he went to Galveston for the mpMRI on April 4, 2019, but that he was returned to his unit without having the procedure and with no explanation; he said he was told the appointment could not be rescheduled. Enriquez asserted that

> UTMB-Galveston has never refused a nonprisoner patient needed medical treatment unless that patient agreed to and accepted medical treatment that he did not want, that he did not need, and that he had refused repeatedly for many years

---

> [E]ven if the trial court had improperly relied on oral testimony, our review of the trial court's summary judgment is de novo, which means that we independently assess the summary-judgment evidence anew to determine whether a question of fact exists. And in our de novo review of the trial court's summary judgment, we are likewise limited by the rules to the competent summary-judgment evidence attached to the summary-judgment motion and response. We may not and do not consider oral testimony adduced at the summary-judgment hearing.

*Cannata v. Blackmon Mooring of Austin, Inc.*, No. 03-10-00672-CV, 2012 WL 2383559, at *8 (Tex. App.—Austin June 20, 2012, no pet.) (mem. op.).

18

because he would simply go to another hospital for the treatment he needed and wanted.

He asserted that UTMB told him that they had five procedures available to correct his benign prostate hypoplasia but did not tell him that it provides prisoners only the most invasive procedure that subjects patients to incontinence and erectile dysfunction.

In his declaration, Enriquez raised some concerns about Adams's affidavit. Adams referred to examinations in January 2015 by a nephrologist, Dr. Ishmeet Walia, who Adams reported diagnosed acute or chronic urine retention due to obstructive uropathy, determined that Enriquez's reduced kidney function did not require diagnosis, and recommended eating Tums for calcium; Enriquez asserts that the report Adams refers to, however, is not attached to Adams's affidavit. Similarly, notes by a Dr. Robyn Crowell, who Adams avers visited Enriquez[7] and discussed the need for possible transurethral resection of the prostate (TURP), are not attached as stated in the affidavit.[8] Enriquez also complains that a reference to lab test results from June 2015 could not support a January 2015 diagnosis, but the sentence concerning the lab test results does not state when the lab tests occurred; it follows a sentence on his January 2015 hospitalization and precedes a sentence concerning a discussion of continuing anemia dated August 28, 2015.

## B.    Equitable relief

Enriquez did not request specific injunctive or equitable relief, seeking instead "prospective injunctive relief to which Plaintiff may show himself entitled" and "[a]ny other

---

[7]    Though the affidavit states the visit occurred in January 2014, it is in context of Enriquez's January 2015 examinations. The 2014 date may be a typographical error.

[8]    Enriquez does not complain that the trial court erred in admitting the affidavit.

relief in equity and in law to which Plaintiff may show himself entitled." A successful applicant for injunctive relief must demonstrate: 1) the existence of a wrongful act; 2) the existence of imminent harm; 3) the existence of irreparable injury; and 4) the absence of an adequate remedy at law. *Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511, 536-37 (Tex. App.—Dallas 2020, pet. denied). The grant or refusal of a permanent or temporary injunction is ordinarily within the sound discretion of the trial court, and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Id.* at 537. A court abuses its discretion if it acts "without reference to any guiding rules and principles" or if its "act was arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

We conclude that the summary-judgment record defeats Enriquez's claim of a wrongful act committed by these appellees. The record shows conclusively that neither the Board of Regents nor Milliken provided or refused to provide healthcare to Enriquez. The record shows that Jones met with; ordered tests for; examined test results from; prescribed medicine for; and made treatment recommendations for Enriquez, some of which he accepted and at least one of which he declined. The TDCJ Offender Orientation handbook illustrates that inter-unit transfers are "based on departmental and offender needs." The warden or department head makes a recommendation that is then reviewed at the unit level and then by the State Classification Committee. Transfer decisions are not made by the Regents, Milliken, or Jones.[9] The record conclusively disproves that Jones committed any wrongful act. We conclude that

---

[9] Enriquez's request for a writ of mandamus "directing Defendants Wainwright, Collier, and Davis to air-condition the Terrell Unit to the same extent to which they agreed to air-condition the Pack Unit" underscores that the appellees remaining in this cause are not responsible for the lack-of-air-conditioning issues in Enriquez's assigned unit.

Enriquez has not shown that the trial court erred by granting summary judgment on Enriquez's request for equitable relief against these three appellees.

### C.    Mandamus relief

Enriquez requested a "writ of mandamus directing Defendant Regents of UT to comply with Section 501.051, Tex. Gov't Code, by directing that all UTMB providers make available to prisoner patients all procedures and medications available to non-prison UTMB patients."  He also requested writs directing Jones (and other doctors) to "comply with the mandate of *Estelle v. Gamble*, 429 U.S. 97 (1976)," to do the following:

- to treat the serious medical need of Plaintiff's acute kidney failure by providing Plaintiff with a comprehensive evaluation of the damage to his kidneys and the treatment necessary to repair or to restore them and which evaluation and treatment shall be done by doctors not connected to or associated with the TDCJ or UTMB but to whom prisoner patients are referred to for such evaluations and treatment; and

- to treat the serious medical needs of prisoners by providing Plaintiff with the medicine available to non-prisoner patients of UTMB but are not available to prisoner patients of UTMB to treat Benign Prostatic Hyperplasia because the Plaintiff is allergic to the medicine available to prisoner patients.

Mandamus may be used to compel an official or commission to take some action.  *See* Anderson, 806 S.W.2d at 793.  District courts have jurisdiction to issue writs of mandamus to compel a public official to perform a ministerial act or to correct a clear abuse of discretion, though not to compel a particular result from an exercise of discretion.  *Id*.  To obtain a common-law writ of mandamus, a party must prove (1) a legal duty to perform a nondiscretionary act, (2) a demand for performance, and (3) a refusal.  *Stoner v. Massey*, 586 S.W.2d 843, 846 (Tex. 1979). Whether the actions Enriquez seeks to compel are ministerial or discretionary and whether any

21

abuse of the discretion is "clear" go to the merits of the mandamus petition. *See Wainwright*, 2018 WL 6565017, at *2.

The record supports the summary judgment. Appellees proved that they did not refuse to perform any requested nondiscretionary act. Adams's affidavit demonstrates that Jones did not deny Enriquez the requested treatments and that the Regents and Milliken were not asked to provide and did not refuse to provide medical procedures and medications. Adams's affidavit explained why all medications and treatments are not necessarily available to all patients on request.[10] Drug shortages occur irrespective of incarceration, and many factors go into prescribing a course of treatment. The record shows the absence of a genuine issue of material fact and supports the conclusion that the requested writs concern exercises of discretion that are within the scope of discretion of the Board, Milliken, and Jones. Enriquez has not shown that the trial court erred by granting summary judgment on the requests for the writs of mandamus against these appellees.

D.     **Damages**

Enriquez requests more than $12 million in damages but does not tie those amounts to any particular act or omission by these appellees as distinguished from each other or from any act or omission by the other defendants in the original lawsuit. As we have affirmed the dismissal of the Section 1983 claims against the Board, we will limit this review to the summary judgment on the claims against Milliken and Jones.

---

[10]   The absence of the attachments to the affidavit discussed above do not undermine these aspects of the affidavit.

22

A cause of action under Section 1983 involves two essential elements: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution, or the laws, of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Leachman v. Dretke*, 261 S.W.3d 297, 305 (Tex. App.—Fort Worth 2008, no pet.). The defense of qualified immunity shields government officials performing discretionary functions within the scope of their authority from individual liability for civil damages under Section 1983 as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.[11] *Brown & Gay Eng'g*, 461 S.W.3d at 128; *Haver v. Coats*, 491 S.W.3d 877, 881 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Generally, when claims based on federal substantive law are raised in state court, state law and rules govern the manner in which the federal claims are tried and proved. *Johnson v. Nacogdoches Cnty. Hosp. Dist.*, 109 S.W.3d 532, 536 (Tex. App.—Tyler 2001, pet. denied). Under Texas law, an affirmative defense is an independent reason why a plaintiff should not recover. *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Ordinarily, the party asserting an affirmative defense has the burden of both pleading and proving the defense. *Id.*

When a governmental official asserts the affirmative defense of qualified immunity by pleading good faith and demonstrating that his actions were within his discretionary authority, the burden shifts to the plaintiff to show that the defendant's conduct violated clearly

---

[11] Enriquez argues that because qualified immunity is an affirmative defense and does not challenge jurisdiction, it is not properly part of an interlocutory appeal. This is not an interlocutory appeal, however. The trial court severed all of Enriquez's claims and causes of action against appellees from all others then granted appellees' plea to the jurisdiction, motion for traditional summary judgment, and motion to dismiss and thereby rendered a final judgment on these claims.

23

established statutory or constitutional rights of which a reasonable person would have been aware. *Texas Dep't of Crim. Just. v. Thomas*, 263 S.W.3d 212, 219 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (describing burden-shifting process); *see also Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992) (setting burdens in 1983 cases in federal case). The procedure essentially mirrors traditional-summary-judgment practice in Texas state courts with respect to affirmative defenses, requiring the movant to establish the essential elements of the affirmative defense, then shifting the burden to the nonmovant to come forward with evidence to demonstrate a genuine issue of material fact to defeat summary judgment. *See Salas*, 980 F.2d at 306; *see, e.g., Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (discussing burden-shifting in summary-judgment case); *Escobar*, 442 S.W.3d at 630 (applying burden-shifting in qualified-immunity case).

An official is not liable for the failure to provide medical care to an inmate unless that failure was due to deliberate indifference to his medical needs. *Gamble*, 429 U.S. at 104. The test for determining deliberate indifference is subjective, not objective. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. To establish that an official acted with deliberate indifference, a plaintiff must prove that the official acted with subjective recklessness by consciously disregarding a substantial risk of serious harm. *Scott v. Britton*, 16 S.W.3d 173, 181 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing *Farmer*, 511 U.S. at 838-39). An official's failure to perceive and to alleviate a risk is not an infliction of punishment. *Texas Dep't of Criminal Justice v. Thomas*, 263 S.W.3d 212, 219 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Even an inadvertent

failure to provide adequate medical care or negligent diagnosis or treatment is not a violation of the Eighth Amendment giving rise to a claim under Section 1983. *Estelle, 429 U.S. at 105-06.*

We conclude that the record shows an absence of a genuine issue of material fact and supports a conclusion of law that these appellees are entitled to qualified immunity from Enriquez's claims. Adams's affidavit showed that these appellees do not have the power to control Enriquez's prison assignment or the conditions in that unit. There are no governing rules or policies, including but not limited to UTMB rules or policies, that have prevented Plaintiff from receiving necessary medical care or that have resulted in his receiving care that is different from the care provided to non-prisoners. The Board and Milliken did not provide or withhold medical care from Enriquez. Jones's treatment notes show a provision of health care and Enriquez choosing to decline a recommended referral; the record shows Jones was not deliberately indifferent to his medical needs and was not subjectively reckless. *See Scott*, 16 S.W.3d at 181. Jones does not control the treatment decisions made by other physicians, particularly not specialists in other settings. The record shows conclusively that these appellees did not engage in the conduct complained of (e.g., assigning Enriquez to an unairconditioned prison unit) and, when they did (e.g., Jones providing treatment), they performed discretionary functions within the scope of their authority in a manner that could reasonably have been thought consistent with the rights they are alleged to have violated. *See Haver*, 491 S.W.3d at 881. Enriquez has not shown that the trial court erred by granting summary judgment on the requests for damages from these appellees under Section 1983.

**CONCLUSION**

Having concluded that the trial court did not err by granting the plea to the jurisdiction on Enriquez's claim for damages against the Regents and did not err by granting a take-nothing summary judgment on Enriquez's remaining claims against these appellees, we affirm the judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:   May 31, 2024